J. B. SORSBY et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 17803.

Court of Civil Appeals of Texas,
Houston (1st Dist.)

July 30, 1981.

W. H. Betts, Hempstead, for appellants.

Mark White, J. Milton Richardson and Sharon Gillespie, Austin, for appellee.

Before COLEMAN, C. J., and PEDEN and SMITH, JJ.

PEDEN, Justice.

J. B. Sorsby, Jr., J. B. Sorsby, Sr., Felman B. Sorsby, and William Frederick Sorsby appeal from a summary judgment awarding to the State of Texas title to and possession of 90.44 acres of land (sometimes called 110 acres) in the Solomon Smith Survey in Waller County. The State, on behalf of the Board of Directors of Texas A & M University, the Commissioner of the General Land Office, and the Public Free School Fund, brought this suit in statutory trespass to try title. The State's allegation of possession of the tract in question on February 1, 1951, was a fictional pleading; the State was not in actual possession at that time. The Sorsbys answered with a plea of not guilty and specially alleged, among other defenses, possession for approximately ninety years by themselves and their predecessors in title without claim of right or demand of possession by the State.

The summary judgment evidence shows that title to the land in question was conveyed away by the State in 1854 and was conveyed back to the State in 1877.

Both parties filed motions for summary judgment; the trial court granted the State's motion and overruled the Sorsbys'. In the appellants' first twelve points of error (Section I of their brief) they argue that the trial court erred in granting the State's motion for summary judgment, and in Section II they complain about the overruling of their motion. Although denial of a motion for summary judgment is usually not appealable, *Ackerman v. Vordenbaum*, 403 S.W.2d 362 (Tex.1966), appellate review of such denial is available where, as here, both parties have moved for summary judgment and the trial court has granted one motion and denied the other, *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958).

When both plaintiff's and defendants' motions for summary judgment are properly before the trial court, all evidence accompanying both motions should be considered in deciding them. *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex.1969). In examining the evidence, we utilize the same standard that the trial court used to determine whether the summary judgment proof establishes as a matter of law that no genuine issue of fact exists as to one or more of the essential elements of plaintiff's cause of action. *Daniels v. Shop Rite Foods, Inc.*, 502 S.W.2d 894 (Tex.Civ.App.1973, writ ref'd n. r. e.). In discharging their burden of demonstrating that the trial court's decision was erroneous because the appellee failed to establish as a matter of law the absence of an issue of material fact, the appellants must point out any fact questions which allegedly existed on material issues, since the appellate court is not re-

quired to search the record for a possible fact issue. *Daniels, supra.* We will, however, indulge every reasonable intendment under the summary judgment proof in favor of the persons against whom the judgment was granted. *Tanner v. Doty,* 311 S.W.2d 508, 509 (Tex.Civ.App.1958, writ ref'd n. r. e.).

We review the proof of the State's claim of title. According to a recitation in a patent issued by the State on November 17, 1854, to the heirs of Solomon Smith, the Board of Land Commissioners of Grimes County had issued unconditional Certificate No. 51 on February 16, 1852, to 320 acres of land in Austin County (described by metes and bounds).

On July 9, 1852, the "only children and heirs of Solomon Smith" conveyed to his widow, Emily Smith, by general warranty deed "unconditional certificate" number 51 for 640 acres of land, together with all the land which might be surveyed and located under and by virtue of such certificate. There were two Solomon Smith surveys patented to the heirs of Solomon Smith, and patent number 726 for 320 acres gives a metes and bounds description that includes the tract which is the subject of this suit. The 1852 deed to Emily Smith was duly executed, acknowledged, and recorded in accordance with the laws in effect at the time of the conveyance.

Emily Smith deeded the same 640 acres covered by certificate number 51 to R. B. Hannay on August 1, 1853, and Mr. Hannay conveyed the same two Solomon Smith 320 acre tracts to H. L. Rankin on November 5, 1854. Mr. Rankin conveyed the land back to Mr. Hannay two years later, and in 1856 Mr. Hannay conveyed the 320 acres tract which includes the 90.44 acres in question in this case to R. J. Swearingen and Jared E. Kirby. When Jared Kirby died, his widow, Helen Kirby, was appointed administratrix of his estate, and she petitioned the district court of Austin County to partition between herself and the Jared Kirby estate the called 220 acres which included the subject tract. Several documents in the summary judgment evidence show that commission-

ers were appointed to partition such land, that Helen Kirby was alloted the called 110 acres which include the subject tract, and that portions of the 110 acres allotted to the Jared Kirby estate were sold by it.

On November 14, 1874 J. T. Swearingen, et al., children of R. J. Swearingen and his wife, both of whom were then deceased, conveyed to their sister, Helen Kirby, "320 Acres known as the Solomon Smith Three hundred and twenty acre survey bounded N by the J. F. Martin 640 Survey—E by a survey made for NW Bush South by 640 Survey patented to John Law & West by a 320 Survey Patented to D. Boon." On October 18, 1977, Helen Kirby et al., conveyed to R. B. Hubbard, Governor of the State of Texas, and his successors in office, several parcels of land, one of which is the tract in question.

Appellants' claim to the subject land is based on limitation and juridical possession. No common source of title is involved.

The appellants assert that the State has failed to establish its title as a matter of law, that genuine issues of material fact were presented, that the trial court erred in finding and relying upon presumptions that the State accepted Helen Kirby's proffered gift of the subject lands for a specified use and that the court erred in entering a judgment approving the commissioners' report confirming the partition of lands between Helen Kirby in her individual capacity and in her capacity as administratrix of the Jared Kirby estate.

Appellants assert that the description in the August 26, 1856, deed from R. B. Hannay to R. J. Swearingen and Jared E. Kirby does not encompass all of the subject land and that the deed from Helen Kirby and P. H. Swearingen to Governor Hubbard passed no title to the State. There were two instruments executed by R. B. Hannay involving the Solomon Smith and John Laws surveys. The first was an agreement dated July 12, 1856, between R. B. Hannay and R. J. Swearingen reciting that on that day Hannay had sold to Swearingen for $5,960 three specified tracts, including 320 acres of land granted to the heirs of S.

Smith Decd" at one dollar per acre. The agreement recited that the lands were to be surveyed and that the agreed total price would be adjusted if the acreage was found to be different from that recited. The first payment was to be made on or before January 1, 1857, at which time Hannay agreed to furnish to Swearingen "a good and sufficient title. . . . "

The Hannay deed dated August 26, 1856, names R. J. Swearingen and J. E. Kirby as grantees and contains a metes and bounds description of the land previously designated. That metes and bounds description is identical to the field note description of the Solomon Smith and John Laws Surveys which is attached to the John Laws Survey Notes and which is covered by both Hannay instruments. Although the patented plat and field notes of the 320 acres of the Solomon Smith survey differ somewhat from the metes and bounds description in the Hannay deed, the difference is reconciled and understood through reference to the John Laws Survey plat which existed when the conveyance was made. When the two instruments are read together, they provide a legally sufficient description of the Solomon Smith survey, including the subject tract, and are sufficient to pass title to the entire survey.

The Sorsbys next urge that even if the land here in question was sufficiently identified in the deed from Hannay to Swearingen and Kirby, there was no summary judgment proof that the subsequent deed of October 18, 1877, from Helen Kirby and R. J. Swearingen to Governor Hubbard effected a transfer of title to the subject land to the State because: (1) the land was insufficiently described in the deed from Helen Kirby et al. to Governor Hubbard; (2) there was no summary judgment proof that the State accepted the donation of the subject land from Helen Kirby et al.; (3) if the State could and did accept the Kirby gift, the title to the subject land was lost when it was not used for the purpose specified in the October 18, 1877, deed; (4) the partition between Helen Kirby and the estate of Jared Kirby, which is part of the State's chain of title and is relied upon for the

sufficiency of description, was void and should not have been considered as summary judgment proof because (i) the county court of Austin County lacked subject matter jurisdiction; (ii) the commissioners' report of the partition never was approved or confirmed by the court; (iii) there was a misjoinder of parties in the partition action, inasmuch as the necessary parties were not present and because Helen Kirby was disqualified as administratrix of Jared Kirby's estate to stand in judgment against herself in her individual capacity; (iv) because of legally insufficient descriptions in the deeds into Kirby and because appellants' predecessors in interest perfected limitation titles in the subject acreage, the parties to the partition did not own the lands partitioned; and (v) the description contained in the partition report was insufficient to identify the 110 acre tract awarded to Helen Kirby therein. We overrule these points.

Regarding the sufficiency of the description in the deed from Helen Kirby, et al., to Governor Hubbard, it is well settled that where other instruments are referred to in a deed they will be considered a part of such deed for purposes of determining the adequacy of its description, *Brown v. Chambers*, 63 Tex. 131, 135 (1885); *Abercrombie v. Bright*, 271 S.W.2d 734, 738–739 (Tex.Civ.App.1954, writ ref'd n. r. e.), and that proper aids for identifying the described land include judgments, certificates, patents, deeds, leases, and maps. 19 Tex. Jur.2d 441, Deeds § 134, and cases cited therein. The Kirby-Hubbard deed refers to certain partition instruments which include both a plat of the subject land and a field note description in metes and bounds.

The tract awarded to Mrs. Helen Kirby in the partition and conveyed by her to Governor Hubbard is clearly identified when the deed and partition instruments are read together. In addition, B. J. Kling, a licensed state land surveyor and registered public surveyor, was able, in his opinion as an expert, to locate the boundaries of the Solomon Smith survey on the ground through reference to the foregoing

descriptions. The appellants complain that it was error to consider Kling's affidavit and that it "purports to contain an expert opinion to and/or identifying lands from hearsay" so it will not support a summary judgment.

We review the affidavit of B. J. Kling, who holds a B. S. degree in Civil Engineering from Texas A. & M. University, has had many years experience as a licensed state land surveyor, and is a registered public surveyor. He has personal knowledge of the facts related and swears that they are true and correct.

In January, 1975, with six other named persons, he completed a survey of the 90.-44–acre tract which he found in his efforts to reestablish the lines and corners of the called 110–acre tract conveyed by Helen M. Kirby and P. H. Swearingen to Governor Hubbard on October 18, 1877.

Except for fences and roads, no evidence was found of the original corners or lines of the Solomon Smith Survey or of the surrounding surveys. The first task was to reestablish the corner of the Solomon (sometimes spelled Soloman) Smith Survey.

The Daniel Boone Survey, A–75, and the John F. Martin Survey, A–227, (formerly Jesse Clary), are senior patents to the Soloman Smith Survey. The bearings of the patent field notes for the Soloman Smith Survey were assumed to be correct since the adjoining survey field notes called for the same bearings. The distances called for on the west, lower east, and southerly lines of the Soloman Smith Survey were also assumed to be correct since the adjacent surveys' distances are in agreement with these lines. The north and upper east lines of the Soloman Smith Survey were projected to an intersection with each other using the patent field note bearings of Due East and N 10° E respectively. This intersection of bearings (rather than the distances called for in the patent field notes measured from the northwest and upper southeast corners) forms the northeast corner of the survey. Thus, the distance on the north and upper east lines of the Soloman Smith Survey differ from the patent field note distances as indicated on the incorporated plat. Using the patent field note calls and the intersected northeast corner, the calculated area of the Soloman Smith Survey is 303.11 acres. The patent called the area 320 acres. The patent field notes for the Soloman Smith survey are mathematically incorrect by an error of 51.63 varas in a S 66° 15′ 32″ E direction.

In positioning the lines and corners of the adjusted Soloman Smith Survey on the ground, the railroad cross-tie fence corner found marking the northeast corner of the Daniel Boone Survey was used for the northwest corner of the Soloman Smith Survey. A straight line formed by the fence corner found near the northeast corner of the Soloman Smith Survey and the railroad cross-tie fence corner at the northeast corner of the Daniel Boone Survey were used to establish the north line of the Soloman Smith Survey and the south line of the adjoining senior John F. Martin Survey. The orientation of the adjusted Soloman Smith Survey shown on the attached and incorporated plat is based on the above-mentioned railroad cross-tie fence corner and line. This orientation also reasonably agrees with the existing roads and use lines in the area. Other presentations may be made from the available information; however, I believe the one chosen is reasonable and conservative.

The Kling affidavit then stated that no original corners or lines of the 110–acre tract were found on the ground and explained how he positioned that tract within the Soloman Smith Survey to allow the best agreement with existing roads and fence lines.

Subdivision (c) of Rule 166–A of the Texas Rules of Civil Procedure now includes this provision:

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided

solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Kling's testimony regarding the location of the subject tract met each of these requirements.

Looking next at the question of whether the State accepted Helen Kirby's donation of the subject land, we hold that the summary judgment proof establishes such acceptance as a matter of law. While it is true that some act should indicate acceptance within a reasonable time, *City of Galveston v. Williams*, 69 Tex. 449, 453, 6 S.W. 860 (1888), it is also true that a deed of gift should operate by presumed assent until a dissent or disclaimer appears. *Taylor v. Sanford*, 108 Tex. 340, 193 S.W. 661 (1917). In addition, the recording of a deed is *prima facie* evidence of acceptance by the grantee. *Texas Land Mortgage Co. v. Cohen*, 138 Tex. 464, 159 S.W.2d 859 (1942); *McAnally v. Texas Co.*, 124 Tex. 196, 204, 76 S.W.2d 997, 1000 (1934). In our case, there is no evidence of disclaimer by the State of its intent to accept the Kirby deed, and the deed was duly recorded only seven days after it was acknowledged. We find no support for the appellants' speculations that (1) the deed was recorded solely because it conveyed property that was purchased as well as gift property and (2) the subject land was unsuitable for the State's purposes.

Appellants rely on *Tanner v. Doty*, 311 S.W.2d 508 (Tex.Civ.App.1958, writ ref'd n. r. e.), for the proposition that summary judgment was precluded in the instant case by a question of acceptance, hence delivery of the Kirby-Hubbard deed could not be presumed. In *Tanner* the appellant himself asserted that he had not accepted the deed, and the court said that where the intention of the parties to the conveyance is raised as an issue, the question of delivery is one for the trier of fact. The *Tanner* court also said, however, that when the proof undisputably shows both an intention on the part of the grantor to deliver the deed as a conveyance and a mutual and concurrent intention on the part of the grantee to accept the same, it can be said as a matter of law that delivery was complete. In the case at bar, since the Sorsbys complain of the capacity of the State to accept Mrs. Kirby's gift and not of the State's *intention* to do so, the *Tanner* case is not helpful to them. Mrs. Kirby's donative intent is not challenged, and the State's intent to accept is *prima facie* established by the recording of the Kirby deed. The Sorsbys are strangers to the Kirby-Hubbard deed and they did not place the State's intent in issue by their speculation that the State may not have intended to accept.

In 1876 the Governor of Texas was authorized by the Legislature to appoint three commissioners to receive donations of land and money to aid in the maintenance and erection of Prairie View A & M. 1876 Tex.Gen.Laws, ch. 92 § 2 at 136, 8 H. Gammel, Laws of Texas 972 (1898). The commissioners were appointed pursuant to that statutory authority on September 26, 1876, and qualified for their appointments on October 6, 1876. Appellants argue that only those three commissioners had the capacity to accept Mrs. Kirby's gift on behalf of the State. That argument is predicated on the assumption that Mrs. Kirby's deed conveyed a determinable fee, conditioned upon a particular use, i. e., the training of students at an agricultural and mechanical college. The clear language of the deed reveals, however, that it conveyed fee simple title and that the acreage was donated "for any and all uses and purposes to which the same may be appropriated, destinated (sic), or in any manner utilized." The Governor of Texas and his successors in office, as grantees for "any and all purposes," were clearly designated to accept the donated acreage. As discussed earlier, the summary judgment proof establishes as a matter of law that Governor Hubbard did accept the donation, and we need not determine whether the commissioners did so. Whether the State subsequently failed to use or deal with the land for many years has no relevance to the question of the deed's de-

livery and presents no material issue of fact in this case.

 The Sorsbys state that it is their primary position that any purported gift by Helen Kirby was void ab initio since the County Court of Austin County had no jurisdiction to enter an order partitioning lands situated in Waller County. They refer to the 1872 partition of the called 220 acres of land between Helen Kirby and the estate of her deceased husband, Jared Kirby. This position of the Sorsbys is not well taken. Partition judgments and decrees of distribution rendered by a court of competent jurisdiction are not subject to collateral attack. *See Garza v. Cavazos,* 148 Tex. 138, 221 S.W.2d 549 (1949); *State Mortgage Corp. v. Ludwig,* 121 Tex. 268, 48 S.W.2d 950 (1932). At the time of the partition in 1872, the 220 acres jointly owned by Helen Kirby and the estate of Jared Kirby were located in Austin County. Waller County had not yet been created, 1873 Tex.Gen. Laws, ch. 38 § 1 at 49, 7 H. Gammel, Laws of Texas 501 (1898), and jurisdiction to partition such land was in the district court of Austin County, the court that partitioned it. In 1872, jurisdiction of the district courts included the authority to effect partitions. See 1870 Tex.Gen.Laws, ch. 81 § 1 at 141, 6 H. Gammel, Laws of Texas 315 (1898).

 The appellants also assert that the report of the Commissioners appointed to appraise and partition the 220 acres was never approved or confirmed by the court. We have been unable to find authority for the proposition that formal court approval or confirmation of such a commissioners' partition report was required by the laws in effect in 1872. The probate statutes did not mention such a requirement, *see* 1870 Tex.Gen.Laws, ch. 81 §§ 137–143 at 160–61, 6 H. Gammel, Laws of Texas 334 (1898), and an 1866 partition was held to be effective as soon as the Commissioners' Report was filed in the minutes of the court, *see, e. g., Adams v. Adams,* 191 S.W. 717 (Tex.Civ. App.1916, writ ref'd). If a confirmatory order was required at the time of the partition, it appears that the district court's order approving and confirming the sale of the acreage partitioned to Jared Kirby, when read together with the documents related to the partition, suffices.

 We find no support in the summary judgment evidence for appellants' argument that the partition was invalid because not all necessary parties were joined. Appellants do not make it clear which necessary parties were not joined or why any such parties were necessary ones. In addition, the Sorsbys suggest that there was a conflict of interest because Mrs. Kirby was a party to the partition suit, both individually and as the representative of the Jared Kirby estate. We hold that her individual interest in or claim for part of the lands in the Jared Kirby estate did not require the district court to disqualify her as administratrix. *See* 1870 Tex.Gen.Laws, ch. 81 § 47 at 146–147, 6 H. Gammel, Laws of Texas, 320–21 (1898).

The summary judgment proof in the State's record title, which already has been discussed, establishes as a matter of law the sufficiency of the descriptions in the 1877 deed from Mrs. Kirby to the State and in the proceedings to partition the 220 acres. It was proper to utilize the partition instruments referenced in the deed to describe the land conveyed. We agree with the assertion in the State's response to the defendants' motion for summary judgment that the referenced documents contain

a plat of the tract which was conveyed to the State (together with the dimensions thereof), as well as a field note metes and bounds description of same. Furthermore, the partition plat clearly shows that one 110-acre tract was to be that of the Estate of J. E. Kirby, deceased, and the other 110-acre tract was to be that of Mrs. H. M. Kirby; and the field notes presented with the plat are specifically identified as "Field notes of the tract alloted to Mrs. H. M. Kirby." The metes and bounds description clearly shows that the tract which is in litigation herein is the tract that was partitioned to Helen Kirby. In fact, the partition instrument was relied upon by a licensed state land surveyor, Mr. B. J. Kling, in the location

of the tract in question upon the ground in 1975.

We do not agree that the deed from Mrs. Kirby to Governor Hubbard was void either because it failed to describe the lands conveyed or because the reference documents failed to do so.

Nor do we agree with the arguments advanced by appellants that the long possession and control of the tract in question by their predecessors in title establishes a limitation title against the State. It is well settled under Texas law that adverse possession, estoppel, and laches do not run against the state. See V.T.C.S., Article 5517; *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83 (1955); *Weatherly v. Jackson*, 123 Tex. 213, 71 S.W.2d 259 (1934); *Humble Oil & Refining Company v. State*, 162 S.W.2d 119 (Tex.Civ.App.1942, writ ref'd); *Saunders v. Hart*, 57 Tex. 8 (1882). No authority has been found for the proposition that a different rule applies when the State reacquires land by deed from a record title holder unless a claimant or his predecessors in title perfected a limitation title while the State did not have title; in our case this would have been between 1852 and 1877, and the appellants have not shown that it was done. The only instrument in defendants' chain of title which purports to convey the subject tract is the 1943 deed from the heirs of Will Cameron to Charles Holt; the summary judgment evidence does not establish any deed into any member of the Cameron family evidencing a transfer of the subject acreage. The deposition testimony of E. H. Flukinger, offered by defendants, concerning fencing and possession of the subject tract by Will Cameron, covers no period prior to 1909 or 1910, and there is no other evidence of possession by defendants or their predecessors before that date. Proof of adverse possession against the titled interest has not been produced.

Appellants argue that the cases of *Atchley v. Superior Oil Co.*, 482 S.W.2d 883 (Tex.Civ.App.1972, writ ref'd n. r. e.) and *State v. Superior Oil Co.*, 526 S.W.2d 581 (Tex.Civ.App.1975, writ ref'd n. r. e.) establish a doctrine of ancient land grants which is applicable to the case at bar. We disagree. Those cases are distinguishable on the facts from this case; the appellants have no chain of title from the sovereign, and in both of the cited cases significant emphasis was placed both on the chain of title and on the length of the juridical possession. In addition, *Atchley* concerned the validity of a Mexican land grant, an escheat to the State, and judicial construction of the Texas Vacancy Statute, Article 5421c, V.T. C.S.; similar facts are not before this court.

Next, appellants contend in points six through eleven that the trial court erred in admitting as summary judgment evidence a series of affidavits offered by the State. The affidavits of J. Milton Richardson and Colleen Batchelor recite in the second paragraph of each that the affiant has personal knowledge of the facts thereinafter set forth and swears to the truth of them. The testimony of Richardson and Batchelor tends to show that the "Report of the Commissioners" was the only document of record which could be the "Decree of Partition" referenced in the Kirby-Hubbard deed. Extrinsic evidence is permitted for such a purpose, *Maupin v. Chaney*, 139 Tex. 426, 431, 163 S.W.2d 380, 383–384 (1942), and we hold that it was not error to consider the Richardson and Batchelor affidavits as summary judgment evidence.

The affidavit of Sharon Gillespie was offered to establish the chain of title to 80 acres in the Soloman Smith Survey which are contiguous to the subject land, and are part of the 110 acres partitioned to the estate of Jared E. Kirby. Appellants' objection is that Ms. Gillespie's opinion of which surveys such other lands and surveys were located in is hearsay. We do not agree. She attached copies of deeds to which she referred, and the descriptions of the properties being conveyed in those deeds include, of course, statements as to the surveys where they are located. The only assertion made by the affiant was: "These documents show that the west boundary line of the Soloman Smith Survey and the east boundary line of the Daniel

Boone are adjoining." We overrule the appellants' eighth point.

 We hold that the affidavits of Scott Howell and Manning B. Snow are not objectionable for their alleged failure to meet the verification requirements of *Youngstown Sheet and Tube v. Penn,* 363 S.W.2d 230 (Tex.1963). Even if they were excluded, however, their loss as summary judgment evidence is not fatal to plaintiff's chain of title, inasmuch as Martin Flukinger identified in his deposition the lower southeast corner of his father's 85 acre tract and physically located it on a map. The chain of title into Mr. Flukinger's father shows such tract to be the one in the Solomon Smith survey which was set apart by partition to the Jared Kirby estate. Additionally, B. J. Kling, a licensed surveyor, located the subject tract on the ground; the admissibility of Mr. Kling's affidavit has already been discussed. Although Kling used the northwest corner of the Solomon Smith survey as his reference, the Kling survey could also be established without difficulty from the lower southeast corner, which was identified by Martin Flukinger in his deposition. The beginning corner in the plat or certificate of the survey is of no higher dignity or importance than any other corner. *Miles v. Sherwood,* 84 Tex. 485, 489, 19 S.W. 853, 854 (1892).

Finally, appellants argue that the case of *Norris v. Plemmons,* 596 S.W.2d 678 (Tex. Civ.App.1980, no writ), precludes summary judgment in our case. In *Norris* it was held that the defendants' allegations in their motion for summary judgment that the survey on which the plaintiffs based their claim was insufficient to identify the land in dispute raised a substantial fact issue as to the accuracy of the survey, precluding defendants' own summary judgment since title to the lands in dispute depended on the accuracy of the survey. In our case the State did not raise any fact issues precluding their own summary judgment.

We hold that the summary judgment evidence as to the State's record title to the subject land establishes its right thereto as a matter of law and that no genuine issue of material fact exists.

Our holdings as to the appellant's points of error in which they complain of the trial court's having granted the State's motion for summary judgment make it unnecessary for us to rule on their points complaining of the denial of their own motion for summary judgment.

Affirmed.