**CITY OF AUSTIN, Appellant,**

v.

**Susan K. MILLER, Appellee.**

**No. 3–88–106–CV.**

Court of Appeals of Texas, Austin.

March 22, 1989.

Rehearing Denied April 19, 1989.

Honorable Iris Jones, Acting City Atty., Larry Delmas, Asst. City Atty., Austin, for appellant.

Tom A. Stribling, Colbert, Freeman & Stribling, Austin, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

The Industrial Accident Board awarded Susan Miller recovery under the Workers' Compensation Act for foot injuries she sustained in the course of her employment by the City of Austin. Tex.Rev.Civ.Stat.Ann. art. 8306 et seq. (1967 & Supp.1989). In a suit to set aside the award, the district court granted Miller's motion for summary judgment, awarding her recovery for the total loss of use of both feet for a cumulative period of 250 weeks. The City appeals. We will affirm the judgment.

## THE CONTROVERSY

The City employed Miller as a police officer. She began to suffer pain in both heels, due to a condition her physician described as "plantar fascitis/heel spur syndrome." After more conservative treatment failed, the physician successfully repaired the condition by surgery on each foot.

In its summary judgment, the trial court awarded Miller $52,236.99 in accrued compensation and $5,874.05 in medical expenses, together with post-judgment interest and costs of court. The City appeals from the judgment on three points of error.

## THE SUMMARY JUDGMENT

The City's first point of error declares simply, "The Trial Court Erred in Granting the Motion for Summary Judgment." When we examine the City's argument under the point, to ascertain the nature of its complaint, we find the City complains only of the trial court's determinations concerning the *extent* and *duration* of Miller's injury. We need not, therefore, consider the sufficiency of the summary-judgment record in any other respect, such as whether Miller's physical condition fell within the

definitions of "injury" and "occupational disease" in § 20 of the Act, or whether she received the injuries in the course of her employment. *Sorsby v. State*, 624 S.W.2d 227, 230–31 (Tex.Civ.App.1981, no writ).

In its judgment, the trial court determined that Miller injured both feet July 3, 1984; and that her injury was a producing cause of the total loss of use of her feet thereafter until February 16, 1987, in the case of the right foot, and February 3, 1988, in the case of the left foot. In complaining of these determinations, the City urges two propositions: (1) the trial-court determinations may not rest upon a theory of judicial admissions made by a City employee who had been designated by the City, under section 4 of Tex.R.Civ.P.Ann. 201 (Supp.1988), to give the City's testimony by deposition; and (2) apart from the theory of judicial admissions, the summary-judgment record did not establish, as a matter of law or undisputed fact, the determinations made by the trial court relative to the extent and duration of Miller's injuries. We reject both contentions.

*Judicial Admissions.* Ben W. Brigham gave the City's deposition.[1] He testified that he was program manager of the Workers' Compensation Division of the City of Austin, with authority to approve or disapprove Miller's claim; he was familiar with Miller's claim; he had originally denied the claim for various reasons, which he conceded were now invalid; and the City had no evidence or facts to support its original belief that Miller's injury was not job-related.

Near the conclusion of Brigham's testimony, Miller's counsel asked Brigham whether he "agreed" with the following definition of "total loss of use":

Total loss of use of a particular member of the body exists whenever such mem-

ber no longer possesses any substantial utility in the practical performance of its functions in the usual tasks of a workman, not merely in the usual tasks of any particular trade or occupation. Or the condition of the injured member, and we can put foot in there if you like, is such that the person cannot get and keep employment requiring the use of such member or foot.

The definition was unquestionably a correct statement of "total loss of use," and included, in its second sentence, the alternative concept that a "total loss of use" may result from an individual's inability to get employment requiring use of the injured member, even though the member retains some utility after the injury. *Travelers Insurance Co. v. Seabolt*, 361 S.W.2d 204, 206 (Tex.1962). The deposition transcript indicates that Brigham first nodded his agreement to the definition, then specifically called counsel's attention to "the definition you just read to me," and said "I would like to agree with that." He repeated "Yes, sir. Yes, sir. That's clear," when Miller's counsel referred again to the definition. Having thus established an agreed and correct understanding of the term "total loss of use," Miller's counsel asked Brigham the following questions, to which Brigham responded as indicated:

Q. All right, sir. And so the City of Austin in this lawsuit today agrees that Susan Miller has had total loss of use of her right foot from July 3rd, 1984, to February the 16th, 1987, as I have defined total loss of use of the right foot?

A. Yes, sir.

Q. Okay. Let's talk about the left foot then. Referring again to this report by Dr. Reynolds dated February 3,

1. In a reply brief, the City contends for the first time that Brigham's deposition transcript should not be considered in this appeal. The City's argument centers on a receipt stamp on the deposition, showing it was "filed" by the district clerk March 11, 1988. The summary judgment hearing took place March 10, 1988.

Despite any problem with the district clerk's stamp, however, both parties agree that the trial court considered Brigham's deposition at the summary judgment hearing. Moreover, *the City* expressly moved this Court to include Brigham's deposition in the record. We granted that motion on August 31, 1988.

There being no dispute that the trial court considered the deposition—and keeping in mind that *the City* brought the deposition to this Court —we believe the City's reply point to be without merit.

1988, he states that [Miller has had problems with the left leg since July 1984, persisting to the date of the report; that she had responded very well to surgery on the foot; and that she had a total loss of use of the left-lower extremity to the date of the report, under Reynold's understanding of the same definition read to Brigham].

All right, sir. And my question is: Does the City of Austin agree today that Susan Miller has had a total loss of use of her left foot from July 3rd, 1984, until today, or at least until February the 3rd, 1988, the day on which Dr. Reynolds wrote this report?

A. Yes, sir.

Brigham's deposition testimony concluded with his answer to the foregoing question.

■ Testimonial declarations by a party, such as those made by Brigham in his deposition, do not ordinarily constitute judicial admissions, but they may in the circumstances outlined in *Mendoza v. Fidelity and Guaranty Insurance Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980). One of the necessary factors is that the party's statement be clear, unequivocal, and deliberate, eliminating the hypothesis of mere mistake or "slip of the tongue." *Id.* In *Mendoza,* the court held the party's testimony did *not* constitute a judicial admission because it was not clear and unequivocal, and did not eliminate the possibility of a mistake. *Id.* The court's holding referred to Mendoza's live testimony, on cross-examination, where he responded "Yes, sir" to questions asking whether he was totally unable to do any kind of work before the Board ordered an increase in his compensation based on changed conditions. The court reasoned in *Mendoza* that a "lay witness" like Mendoza was *incompetent* to make a "clear and unequivocal" statement regarding the issue of "total loss of use" because of the very nature of that issue—it posed a "fact question" that usually required expert medical training and knowledge to determine accurately, as opposed to the limited capacity of a "lay witness" to answer the question based merely upon his untrained senses and his possibly mistaken understanding of what might be comprised

in the term "total loss of use." He might, for example, understand the term to include legally irrelevant factors, such as the individual's "ability to obtain employment as a manual laborer" or whether jobs were available "in his community." *Id.*

■ The City invokes the *Mendoza rationale* in the present case. The City argues (1) the deposition transcript showed that Brigham was not a physician or otherwise possessed of the expert knowledge and training necessary to form an opinion about Miller's condition, and (2) his deposition statements might have been based on irrelevant factors that entered into his understanding of "total loss of use." We hold the *Mendoza* rationale does not apply in this case.

Brigham testified that for the past 10 or 12 years he had been responsible for determining whether to accept or reject workers' compensation claims, and to make certain that benefits were provided injured workers in accordance with the workers' compensation laws and the rules of the Board. Before he "assumed" that "job" with the City, he worked as a "safety technician in the military," for which he received "training," and he "handled" and "investigated" "job related injuries." Concerning his present duties of administering the workers' compensation laws and the rules of the Board, and whether he had "any specific training in that area," he had attended "seminars and studies and, also," he worked "very close" with the City's attorneys in discharging his duties. He was, he stated, "familiar" with Miller's particular claim, and the balance of his testimony carries that same implication.

Brigham's testimony did *not* amount to an opinion regarding any physical limitations affecting Miller's feet, arrived at by deductions Brigham had made from his observations of Miller and his perceptions about the physical condition of her feet, guided perhaps by some imperfect medical knowledge about the human foot. Had this been the nature of Brigham's testimony, his statements about loss of use would fall squarely within the *Mendoza* rationale,

so that they could not possibly constitute judicial admissions. Brigham's testimony was quite different.

Brigham testified, instead, regarding matters well *within* his competence, and his peculiar experience, knowledge, training, and, indeed, his official responsibilities. First, he testified that he agreed with the correct definition given him of "total loss of use." It would appear that his duties, in accepting or rejecting workers' compensation claims for the City, and his past work in that regard, would require that he agree with the definition and understand its meaning. He could hardly be viewed as a "lay witness" in reference to that term of art. Second, Brigham testified as to the City's *litigation position* in the Miller lawsuit. The gist of his testimony, in this respect, was simply that the City had no basis in fact or law for denying Miller's claim of total loss of use, for the periods in question, because it had no basis for denying the conclusions and opinions of her physician, which fully justified and sustained her claim. This too would appear to be well within Brigham's peculiar experience, knowledge, training, and employment duties, and he could hardly be viewed as a "lay witness" concerning the City's litigation position *vis-a-vis* Miller's worker's compensation claim, brought under and governed by statutory and regulatory provisions administered by Brigham for the City. Finally, the possibility of a mistake on Brigham's part, as to *any aspect* of his testimony, is excluded not only because of the nature of the questions and his competence and answers, but because he never retracted, contradicted, or explained his testimony after ample opportunity to do so, if he did not correctly understand the questions, if he was in error in his answers, if he thought himself incompetent to give an answer, or if he did not appreciate at the time the legal effect of any question or answer.

Accordingly, we hold Brigham's judicial admissions sufficient to sustain the trial court's determinations as to total loss of use for the periods in question.

■ *Sufficiency of the Summary–Judgment Record Without the Judicial Admissions.* Even without the City's judicial admissions, we believe Miller's total loss of use, for the periods indicated, was established as a matter of undisputed fact. Miller's treating physician testified, on deposition and without contradiction in the record, that her injury resulted in a total loss of use for the periods indicated, in his opinion, based on the same definition of "total loss of use" as that mentioned above.

The City contends the physician's testimony "raised a fact question" within itself because he also testified as follows: (1) Miller was still working for the City, at the time of the physician's deposition, even though she was on light duty; (2) if required to evaluate her condition in a preemployment physical, he would not "have passed her for a job that required her to do a lot of walking and standing," but he probably would have if she would be sitting; (3) she was not disabled from all police work, but she was working in a diminished capacity and was disabled from patrol car and street work; and (4) the function of her foot with pain was perhaps 20% until she fully recovered after surgery. Apart from the physician's deposition testimony, the City refers to Miller's own acknowledgement that she was on "light duty" at the time of the physician's deposition; that her right foot had improved tremendously since surgery; that both feet had improved dramatically; and that she was working regular eight-hour days at the time of her deposition.

All of the statements in question refer to that part of the definition of "total loss of use" which was the context of the physician's uncontradicted testimony—that the condition of Miller's feet was such that she could not get and keep employment that required use of her feet. The physician did *not* rest his opinion on the *alternative* definition which pertained to the absence of any substantial utility of the feet in performing the usual tasks of a workman. We hold, therefore, that no "fact question" was raised in the summary-judgment record as to "total loss of use."

## AMOUNT OF COMPENSATION

In its judgment, the trial court determined that Miller sustained an injury to both feet on July 3, 1984, followed by a total loss of use of the right and left foot for 137 and 186 weeks, respectively. Under Tex.Rev.Civ.Stat.Ann. art. 8306, § 12 (Supp.1989), Miller was entitled to compensation for a maximum of 125 weeks for each specific injury. The trial court calculated Miller's award on the basis of 250 weeks, or the aggregate of the maximum of 125 weeks allowed for each foot separately.

█ The City contends in its second point of error that Miller was entitled to an award calculated on the basis of 186 weeks, or the *longest* of the two concurrent periods of incapacity, and that the trial court erred in basing the award on the aggregate of 250 weeks. We disagree.

Both parties contend the point of error is determined by the Supreme Court's recent interpretation of article 8306, § 12,[2] set out in *Leos v. State Employees Workers' Compensation Division*, 734 S.W.2d 341 (Tex. 1987). In *Leos*, the trial court awarded the claimant 250 weeks of compensation based on the jury's finding of total loss of use of both feet for five years. The court of appeals modified the judgment to award only 125 weeks of compensation, following the longstanding rule that a claimant with concurrent multiple specific injuries could receive benefits only for the single specific injury producing the longest period of incapacity. *See United States Fidelity & Guaranty Co. v. London*, 379 S.W.2d 299 (Tex.1964); *Texas Employers Insurance Ass'n v. Patterson*, 144 Tex. 573, 192 S.W. 2d 255 (1946). The Supreme Court reversed the decision of the court of appeals—and disapproved its previous interpretation of article 8306, § 12—by holding the claimant was entitled to cumulative benefits for his concurrent multiple specific injuries. *Leos*, 734 S.W.2d at 342.

On its face, the holding of *Leos* would seem plainly to mandate the very recovery awarded Miller by the trial court. The City suggests, however, that a close reading of *Leos* reveals the 250 weeks of compensation awarded the claimant merely coincided with his five-year incapacity due to foot injuries; therefore, the City argues, *Leos* did not change the settled rule that allowed specific-injury benefits for a period lasting only as long as the duration of incapacity which resulted from the concurrent specific injuries. The City argues, understandably, that such a result is more in keeping with the legislative intent underlying the Workers' Compensation Act: compensation for an injured worker's *actual incapacity*. *Leos* at 343. We reject the City's theory because the reasoning of the court in the *Patterson* decision is essential to the City's theory, and in *Leos* the Supreme Court explicitly overruled the *Patterson* decision *and* rejected its reasoning because it "ignores the plain, clear language of the statute" that "compensation for specific injuries ... shall be cumulative as to time and not concurrent," referring to the second part of article 8306, § 12. *Leos* at 342.

In *Patterson*, like *Leos* (and Miller's case as well), the court dealt with multiple specific injuries resulting in incapacity that was only temporary. The *Patterson* court construed article 8306, § 12 as it applied to awards for temporary loss of use, holding that compensation for the temporary loss of use of a body member was compensation for *incapacity*, to be measured by the *duration of the incapacity*. *Patterson*, 192 S.W.2d at 259. The *Patterson* court stated:

> [w]hen ... an employee suffers concurrent injuries, here injuries to three of his fingers, resulting in *concurrent temporary incapacities* and *he is paid for the*

2. The following is the pertinent language of Tex.Rev.Civ.Stat.Ann. art. 8306, § 12 (Supp. 1989):

Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this Section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one (1) member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent.

*injury that has caused the longest period of incapacity*, his compensation has been measured by, and payment has been made for, the full period of incapacity caused by the injuries.

*Id.* (emphasis added). That is precisely the City's reasoning here, and it was explicitly rejected in *Leos*. *Leos*, 734 S.W.2d at 342. In the court's view in *Leos*, "the clear intent of the legislature in enacting Art. 8306, sec. 12 was to permit cumulative benefits for multiple specific injuries not to exceed 401 weeks." *Id.* By holding that compensation for specific injuries is not restricted to the longest period of incapacity, but accrues rather on a *per se* basis for each specific injury, capping benefits at 401 weeks of compensation, *Leos* mandates the award of 250 weeks of compensation to Miller. *See London*, 379 S.W.2d at 315 (Calvert, C.J., dissenting) (suggesting that duration of incapacity is not a proper subject of inquiry in specific injury cases; "[o]nce loss or loss of use ... is established, the right to benefits rests in *presumed* incapacity which the Legislature has predetermined but which may or may not actually exist"). We hold accordingly.

## DISCOVERY SANCTIONS

In its remaining point of error, the City complains of an order awarding Miller attorneys' fees and expenses in the amount of $4,164.15. The trial court awarded this sum in response to Miller's "Motion for Expenses" under Tex.R.Civ.P.Ann. 215(4)(c) (Supp.1988). In her motion, Miller contended the City improperly denied certain requests for admissions, thereby requiring Miller to incur unnecessary expense in proving the truth of the relevant propositions. The City does not dispute the *amount* of expenses claimed by Miller, but argues the trial court erred by awarding Miller recovery for them. The trial court granted the sanction a few days after its entry of summary judgment. We affirm the order.

Rule 215(4)(c) provides that, if a party *fails* to admit the truth of a matter requested under Rule 169, and the requesting party subsequently proves the truth of the matter, then the requesting party may obtain an order to recover his reasonable expenses incurred in making that proof. The requesting party need only file a motion to establish a basis for recovering his expenses, and the trial court "shall make the order unless it finds" sufficient reason for the responding party's failure to admit. *Id.; see generally* Sales, *Pretrial Discovery in Texas Under the Amended Rules: Analysis and Commentary*, 27 S.Tex.L.Rev. 305, 378–79 (1986).

Miller propounded to the City certain requests for admissions under Rule 169: (1) that Miller sustained on July 3, 1984 an injury in the course and scope of her employment; and (2) that Miller timely and properly gave notice of her injury. The City denied both propositions.

Thereafter, Miller required the City to designate a person to testify on its behalf under Tex.R.Civ.P. 201, § 4. The City designated Ben Brigham, the program manager of its Workers' Compensation Division.

At Brigham's deposition, he admitted: (1) the City could not deny that Miller sustained an injury on the job; (2) her disability due to the injury began July 3, 1984; (3) Miller's "Employee Report of Accident or Incident" indicated she properly reported in a timely manner her injury and claim; and (4) the City had no basis upon which to deny that notice of her claim was not properly or timely given. Brigham's testimony notwithstanding, the City contends it had reasonable grounds to deny Miller's requests under Rule 169.

■ Rule 215(4)(c) permits four categories of excuses that will justify a responding party's denial, and exempt that party from the kind of sanction ordered by the trial court. The particular excuse claimed by the City is that it had "reasonable ground[s] to believe that [it] might prevail on the matter[s]" referred to in Miller's requests. Tex.R.Civ.P.Ann. 215(4)(c)(3) (Supp.1988).

The City refers to its *initial* investigation and appraisal of Miller's claim, soon after she sustained her injuries, and the grounds upon which the City relied *at that time* in concluding that she was probably

not entitled to compensation under the Act. Much later, however, Miller underwent surgery after more conservative treatment had failed, and ultimately recovered. She obtained an award from the Board based on her injuries, and a suit in district court ensued to set aside that award. In the district-court proceeding, the City designated Brigham, a person experienced, trained, and specifically charged to approve or disapprove all workers' compensation claims (including Miller's), to give the City's deposition testimony in the case. In addition to conceding the very propositions set out in Miller's request for admissions, Brigham admitted that the grounds relied upon by the City *in its initial evaluation* of Miller's claim were *without foundation*. Brigham never retracted the admissions so far as the record shows. In these circumstances, we cannot conceive any basis upon which the City might resurrect the grounds for its *initial* evaluation of Miller's claim, and contend they furnished *reasonable* grounds for believing the City would *prevail* thereon in the district-court proceeding. We therefore affirm the sanctions ordered by the trial court.

Finding no error, we affirm the judgment below.

Affirmed.