**Nathaniel SHELTON and Marcia Shelton, Appellants**

v.

**Alfred KALBOW, as Trustee of the Alfred Kalbow Marital Trust Dated August 30, 2007, as Established Under the Kalbow Family Loving Trust Dated June 24, 1991, Dorothy Holle, David Wellmann, Steven Siemglusz, Alison Dreyer, Lindsay Siemglusz, Freddie Wellmann, and Linda Wellmann, Appellees**

**NO. 14–14–00710–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed March 22, 2016

**14.** As noted in *Hollis*, articles 42.111, 45.051, and 45.0511 have frequently been amended.

Mary Jo Holloway, Chappel Hill, TX, Jamie J. Elick, Bellville, TX, for Appellants.

Steven Calen Haley, Brenham, TX, for Appellees.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

Marc W. Brown, Justice

Appellants Nathaniel and Marcia Shelton attack a final judgment that declares a certain .2–acre roadway to be public, orders them to remove obstructions and permanently enjoins them from blocking that roadway, and orders them to pay attorney's fees to appellees Alfred Kalbow, as Trustee of the Alfred Kalbow Marital Trust dated August 30, 2007, as established under the Kalbow Family Loving Trust dated June 24, 1991, Dorothy Holle, David Wellmann, Steven Siemglusz, Alison Dreyer, Lindsay Siemglusz, Freddie Wellmann, and Linda Wellmann (collectively, the "Kalbow Parties"). The Sheltons argue that the trial court erred in: (1) granting the Kalbow Parties' motion for summary judgment finding the road in question to be public and issuing a permanent injunction; (2) denying the Sheltons'

plea to the jurisdiction; (3) denying the Sheltons' motion to strike and their special exceptions and objections to the Kalbow Parties' summary judgment motion; and (4) awarding attorney's fees on the declaratory judgment action. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1928, George Green conveyed by warranty deed a certain .2–acre L–shaped plat of land to Sam D.W. Low, County Judge of Washington County, Texas, and his successors in said office.[1] This L–shaped plat contains much of the roadway known as "Big Bird Lane," which .intersects State Highway 105 (formerly, State Highway 90). Big Bird Lane crosses a 30–acre tract purchased by the Sheltons in 2001. This dispute centers on the status of Big Bird Lane.

The Sheltons erected fences and constructed a gate in the right of way of Big Bird Lane. The Kalbow Parties filed suit to regain access to their properties, alleging that Washington County was the owner of Big Bird Lane through express dedication and that the Sheltons had erected fences and barriers obstructing the Kalbow Parties' use of the public road. The Kalbow Parties sought a declaratory judgment, requested injunctive relief for removal of the obstructions placed by the Sheltons, and requested attorney's fees.[2]

The Kalbow Parties filed a motion for traditional and no-evidence summary judgment, arguing: (1) there was no genuine issue of material fact regarding the continued validity and existence of the county

---

1. We refer to this as the "1928 deed."

2. The Sheltons filed a counterclaim against one party, Alfred Kalbow, individually and in his capacity as trustee, for trespass, negligent trespass, private nuisance, intentional infliction of emotion distress, and infliction of bodily injury. Kalbow countered with claims against Nathaniel Shelton for false imprisonment and malicious prosecution. The Sheltons' counterclaims and Kalbow's claims for false imprisonment and malicious prosecution were severed and are not at issue in this appeal.

right of way, Big Bird Lane, and any interference of the Kalbow Parties' use of Big Bird Lane by the Sheltons should be enjoined, and (2) there was no evidence that Big Bird Lane had been terminated, abandoned, or ceased to exist. The Kalbow Parties submitted an affidavit by David Wellmann; the warranty deeds granted to each of the Kalbow Parties; the warranty deed with vendor's lien from Benjamin and Eileen Hajovsky to the Sheltons dated March 13, 2001; the warranty deed from George Green to Sam D.W. Low, County Judge of Washington County, Texas, and his successors in said office dated March 8, 1928; an affidavit by Donald Lampe, a registered professional land surveyor, attaching his survey plat of Big Bird Lane; Washington County Commissioners' Court Minutes dated March 18, 1928; Washington County's "E–F–G Grantor" deed index; and an affidavit by Willy Dilworth, chief appraiser for the Washington County Appraisal District. The Kalbow Parties filed a first supplement to their summary judgment motion, which included an affidavit by abstractor Mary Kay Hurta. They filed a second supplement to their summary judgment motion, which included an affidavit by abstractor Kay Larson. They also filed supplemental affidavits by Larson and Lampe.

The Sheltons filed a response and submitted an affidavit by Dilworth; an affidavit by Ronald Bryant, a registered professional land surveyor; an affidavit by Nathaniel Shelton; the warranty deed with vendor's lien from the Hajovskys to the Sheltons dated March 13, 2001; the warranty deed from Jo Ann Murski and Wayne Hajovsky to Freddie and Linda Wellmann dated April 11, 2001; the warranty deed from George Green to Washington County dated March 8, 1928; and the warranty deed from Sam Thornhill to Bone, J. M., and Elias Ferguson dated January 23, 1872. The Sheltons filed two supplemental responses, including two supplemental affidavits by Bryant. The Sheltons also filed a motion to strike, a plea to the jurisdiction, and special exceptions and objections to the Kalbow Parties' summary judgment motion.

The trial court held a hearing and signed an order granting the Kalbow Parties' first amended traditional and no-evidence motion for summary judgment. The trial court also signed an order denying the Sheltons' motion to strike. The Kalbow Parties filed a motion for severance of the Sheltons' counterclaims. The Sheltons filed a motion for new trial. They also requested that the trial court rule on their special exceptions and objections. The trial court held a hearing and signed orders denying the Sheltons' special exceptions and objections, motion for new trial, and plea to the jurisdiction. The trial court also signed an order granting the Kalbow Parties' motion for severance—severing their declaratory judgment claims and creating a new cause number.

The case proceeded to appeal. However, this court abated for the trial court to clarify its summary judgment order. On November 7, 2014, the trial court signed an amended order on the Kalbow Parties' first amended traditional and no-evidence motion for summary judgment, which expressly stated that the November 7 amended order taken together with the severance order was interlocutory pending adjudication of the Kalbow Parties' attorney's-fees claims.

The trial court held a bench trial on attorney's fees. On November 21, 2014, the trial court signed a final judgment declaring Big Bird Lane as described in the 1928 deed to be a dedicated, valid, and

subsisting public road;[3] ordering the Sheltons to remove obstructions on, and permanently enjoining them from maintaining obstructions on and interfering with the use of, Big Bird Lane by the Kalbow Parties; and ordering the Sheltons to pay attorney's fees, expert fees, and costs.[4] This court reinstated the Sheltons' appeal.

## II. ANALYSIS

### A. Plea to the jurisdiction

We first consider the Sheltons' second issue—whether the trial court erred in denying their plea to the jurisdiction. We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating the court's jurisdiction. *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993)). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not reveal incurable defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

The standard of review for a plea to the jurisdiction based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228; *Thornton v. Ne. Harris Cty. MUD 1*, 447 S.W.3d 23, 32 (Tex.App.—Houston [14th Dist.] 2014, pet. denied). Under this standard, we take as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the movant presents conclusive proof that the trial court lacks subject matter jurisdiction, then the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction or the plea will be sustained. *See id.*

The Sheltons' plea challenged both the pleadings and the existence of jurisdictional facts.[5] We conclude the Kalbow Parties alleged sufficient jurisdictional facts and the Sheltons did not meet their burden to present conclusive proof that the trial court lacks subject matter jurisdiction.

The Sheltons argue that the Kalbow Parties lack standing because only Washington County can make the assertion that Big Bird Lane is a public road. However, private landowners have standing to enforce a public road where they allege an injury to their property rights. *See, e.g., Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex.1979) ("Public dedications are en-

---

**3.** The trial court appended a plat to its final judgment showing the boundaries of the .2–acre public portion of Big Bird Lane and marking in orange the obstructions erected by the Sheltons. *See* Appendix A.

**4.** The final judgment recited: "All relief requested in this case and not expressly granted is denied. This Final Judgment finally disposes of all parties and all claims herein and is appealable."

**5.** The only evidence the Sheltons attached to their plea was a Washington County public notice pursuant to chapter 258 of the Transportation Code, ostensibly taken from the March 13, 2007 edition of the Brenham Banner Press. However, the Sheltons filed their plea after they filed their second supplemental response to the Kalbow Parties' first amended motion for traditional and no-evidence summary judgment, and they referenced their previously submitted evidence.

forceable by private landowners who have a property interest that will suffer if the publicly dedicated land is obstructed."); *Basham v. Gardner*, No. 10–05–00398–CV, 2007 WL 2389990, at *1 (Tex.App.—Waco Aug. 22, 2007, no pet.) (mem.op.) (citing *Brooks*, 578 S.W.2d at 674); *Stein v. Killough*, 53 S.W.3d 36, 40 (Tex.App.—San Antonio 2001, no pet.) (same). Here, the Kalbow Parties alleged that they are private landowners whose property rights are being adversely affected by the Sheltons' erection of fences and a gate across Big Bird Lane, a roadway expressly dedicated to the public, which the Kalbow Parties used to access State Highway 105 and their properties.[6] We conclude that the Kalbow Parties alleged a sufficiently distinct property interest to support standing and that the Sheltons did not conclusively prove the Kalbow Parties lack standing.

■■■ The Sheltons also attack justiciability, arguing that the justiciable issue "is between Washington County and whoever asserts 'Big Bird Lane' is a public road." For a controversy to be justiciable, there must be a real controversy between the parties that will actually be resolved by the judicial relief sought. *See State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994). A declaratory judgment is appropriate where a justiciable controversy exists as to the rights and status of the parties and the declaration will resolve the controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex.2004). In other words, a court may not render an advisory opinion or rule on a hypothetical fact situation. *See id.* at 164.

The Kalbow Parties alleged they have a property interest in, and used Big Bird Lane as a means of accessing, their properties; they further asserted that the Sheltons erected physical barriers preventing that use and have refused to recognize the roadway's public character. We conclude that the Kalbow Parties alleged a justiciable controversy and that the Sheltons did not meet their burden to prove this controversy is not justiciable.

■■■ The Sheltons further contend that Washington County possesses exclusive jurisdiction to determine or clarify the status of Big Bird Lane. We reject this argument. The Sheltons have not presented, and this court has not located, any statutory or other authority granting to a county commissioners' court the exclusive jurisdiction to determine such a dispute. Under the Uniform Declaratory Judgments Act (UDJA), "a person interested under a deed, will, written contract, or other writings constituting a contract ... may have determined any question of construction or validity arising under the instrument, ... contract, ... and obtain a declaration of rights, status, or other legal relations hereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2013). A court of record within its jurisdiction has the power to declare such rights, status, and other legal relations. *Id.* § 37.003(a) (West 2013). Texas courts often adjudicate de-

---

**6.** Those who purchase property abutting or with access rights to an existing road have private rights entitling them to use those roads free from obstruction in addition to their rights in common with the general public. *See City of San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex.1974); *see also State v. Delany*, 197 S.W.3d 297, 299 (Tex.2006) (per curiam) ("Texas has long recognized that property abutting a public road has an appur-

tenant easement of access guaranteeing ingress to and egress from the property."); *Greer v. Robertson*, 297 S.W.2d 279, 282 (Tex. Civ.App.—Fort Worth 1956, writ ref'd n.r.e.); *Moore v. Comm'rs Ct. of McCulloch Cty.*, 239 S.W.2d 119, 121 (Tex.Civ.App.—Austin 1951, writ ref'd); *Comm'rs Court of Harris Cty. v. Kaiser*, 23 S.W.2d 840, 841 (Tex.Civ.App.— Galveston 1929, writ ref'd).

claratory judgment actions to determine the dedicated status of a disputed road.[7]

The Sheltons rely on *Coryell County v. Harrell,* 379 S.W.3d 345 (Tex. App.—Waco 2011, no pet.), to argue that Texas law vests sole authority in counties to determine which of their roads are public. This reliance is misplaced. Unlike *Harrell,* this case does not involve county road map proceedings under chapter 258 of the Texas Transportation Code. *Cf.* 379 S.W.3d at 349–50.[8] Moreover, in *Harrell,*

7. *See, e.g., Chaney v. Camacho,* No. 04–12–00358–CV, 2013 WL 6533123, at *1 (Tex. App.—San Antonio Dec. 11, 2013, pet. denied) (mem.op.); *Wallace v. Kent Cty.,* No. 07–11–00427–CV, 2013 WL 4531253, at *1 (Tex.App.—Amarillo Aug. 21, 2013, no pet.) (mem.op.); *Mitchell v. Ballard,* 420 S.W.3d 122, 125 (Tex.App.—Texarkana 2012, no pet.); *McCulloch v. Brewster Cty.,* 391 S.W.3d 612, 614 (Tex.App.—El Paso 2012, no pet.); *Callaghan Ranch, Ltd. v. Killam,* No. 04–10–00802–CV, 2012 WL 394594, at *1 (Tex. App—San Antonio Feb. 8, 2012, pet. denied) (mem.op.); *Braun. v. Braun,* No. 04–09–00486–CV, 2010 WL 2513428, at *1–2 (Tex. App.—San Antonio June 23, 2010, pet. denied) (mem.op.); *Ross v. Womack,* No. 13–08–002–CV, 2008 WL 4822208, at *1 (Tex.App.—Corpus Christi Nov. 6, 2008, no pet.) (mem. op.); *Basham,* 2007 WL 2389990, at *1; *Walker v. Lampman,* No. 10–06–00096–CV, 2007 WL 2276195, at *1 (Tex.App.—Waco Aug. 8, 2007, pet. denied) (mem.op.); *Betts v. Reed,* 165 S.W.3d 862, 866 (Tex.App.—Texarkana 2005, no pet.); *Futrell v. Lopez,* No. 04–02–00894–CV, 2003 WL 21269591, at *1 (Tex. App.—San Antonio June 4, 2003, no pet.) (mem.op.); *Hatton v. Grigar,* 66 S.W.3d 545, 548 (Tex.App.—Houston [14th Dist.] 2002, no pet.); *Supak v. Zboril,* 56 S.W.3d 785, 788 (Tex.App.—Houston [14th Dist.] 2001, no pet.); *Cty. of Real v. Hafley,* 873 S.W.2d 725, 726 (Tex.App.—San Antonio 1994, writ denied); *Broussard v. Jablecki,* 792 S.W.2d 535, 536 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Uvalde Cty. v. Barrier,* 710 S.W.2d 740, 742 (Tex.App.—San Antonio 1986, no writ); *Eastex Wildlife Conservation Ass'n v. Jasper,* 450 S.W.2d 904, 906 (Tex.Civ. App.—Beaumont 1970, writ ref'd n.r.e.).

8. The Texas Legislature adopted chapter 258 to provide an expedited procedure to allow a county to preserve the existence of a public interest in a road when it might not otherwise be able to prove that such interest had been established due to a lack of witnesses with firsthand knowledge of the road's genesis. *Bastrop Cty. v. Samples,* 286 S.W.3d 102, 108 n. 5 (Tex.App.—Austin 2009, no pet.) (discuss-ing House Transp. Comm., Bill Analysis, Tex. H.B. 1117, 78th Leg., R.S. (2003)). Chapter 258 does not create a new basis for a county to establish a claim to a roadway; rather, "it merely establishes a procedure whereby [a] county can clarify a public interest already in existence prior to September 1, 1981." *Wallace,* 2013 WL 4531253, at *3. Chapter 258 only applies to a county that initiated or completed compliance with its provisions before September 1, 2011. *See* Tex. Transp. Code Ann. § 258.007 (West 2013). Pursuant to chapter 258, a county is permitted to adopt a "county road map that includes each road in which the county claims the existence of a public interest: (1) under Chapter 281 or other law; or (2) as a result of having continuously maintained the road with public funds before September 1, 1981." *Id.* § 258.002(a) (West 2013). A person may appear before the county commissioners' court or file a written protest with the county judge regarding the county's claim of a public interest in a road. *Id.* § 258.002(b). If a protest is filed, the commissioners' court must appoint a "jury of view consisting of five property owners who have no interest in the outcome of the protest" to determine the validity of the county's claim. *Id.* A county road map adopted under section 258.002 constitutes "conclusive evidence" of: (1) the public's right of access over a road included on the map and (2) the county's authority to spend public money to maintain a road included on the map. *Id.* § 258.003 (West 2013). However, the failure to include on a county road map adopted under this section a road in which the county previously has acquired a public interest by purchase, condemnation, dedication, or adverse possession does not affect the status of the omitted road. *Id.* § 258.002(g). Under section 258.004, a person may "contest the inclusion of the road in the county road map by filing a suit in a district court in the county in which the road is located not later than the second anniversary of the date on which the county road map including the road was adopted." *Id.* § 258.004(a) (West 2013). A party need not first file a protest with the

the court of appeals concluded that the trial court properly had jurisdiction to determine whether the disputed easement was a county road. *Id.* at 347, 353; *see also Wallace v. Kent Cty.*, No. 07–11–00427–CV, 2013 WL 4531253, at *1 (Tex. App.—Amarillo Aug. 21, 2013, no pet.) (mem.op.) (trial court adjudicated claim involving chapter 258 road map contest and county's UDJA counterclaim).

 Finally, the Sheltons argue that jurisdiction is lacking because Washington County was not joined. We disagree. Section 37.006(a) of the UDJA provides that any person having a claim or interest that would be affected when declaratory relief is sought should be made a party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2013). Rule 39 determines whether a trial court has authority to proceed without joining a person whose presence is made mandatory by the UDJA, requiring the presence of all persons who have an interest in the litigation so that any relief awarded will effectively and completely adjudicate the dispute. *Brooks,* 141 S.W.3d at 162; *see* Tex. R. Civ. P. 39(a). However, a declaration does not prejudice the rights of a person not a party to the proceeding. *See* Tex. Civ. Prac. & Rem. Code § 37.006(a). Moreover, the Supreme Court of Texas has recognized the failure to join a party in a declaratory judgment action rarely deprives a court of jurisdiction. *See Brooks,* 141 S.W.3d at 162–63 (discussing section 37.006(a) and rule 39(a)(1) in holding that failure to join all property owners affected by restrictive covenant did not deprive trial court of jurisdiction to enter declaratory judgment). Although the parties continue to litigate its correctness, the trial court's judgment represents a final and complete

commissioners' court or county court before filing a lawsuit in a district court. *Samples,*

adjudication of the dispute for the Kalbow Parties and the Sheltons. *See id.* at 162. We conclude that the nonjoinder of Washington County does not prevent the trial court from rendering complete relief here, much less destroy jurisdiction. *See Wood v. Walker,* 279 S.W.3d 705, 713 (Tex. App.—Amarillo 2007, no pet.) (despite dismissal of county, trial court could render complete relief in dispute over public nature of road); *cf. State v. Noser,* 422 S.W.2d 594, 599 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.) (trial court correctly overruled plea in abatement to join State in declaratory judgment action over public nature of road).

We overrule the Sheltons' second issue.

## B. Summary judgment

In their first issue, the Sheltons challenge the trial court's November 7, 2014 amended order granting the Kalbow Parties' first amended motion for traditional and no-evidence summary judgment.

### 1. Standard of review and governing law

Our review of a summary judgment is de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort,* 289 S.W.3d at 848. Once the movant produces evidence

286 S.W.3d at 108–09.

entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Wilkinson v. USAA Fed. Sav. Bank Trust Servs.,* No. 14–13–00111–CV, 2014 WL 3002400, at *4 (Tex.App.—Houston [14th Dist.] July 1, 2014, pet. denied) (mem.op.).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim. Tex. R. Civ. P. 166 a(i). A no-evidence motion for summary judgment "must state the elements as to which there is no evidence" and should not be general or conclusory. *Id.*; *see also id.* 166a cmt. to 1997 change. Unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact, the trial court must grant the motion. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002) (citing rule 166a(i)).

 Dedication is the act of appropriating private land to the public for any general or public use. *Hatton v. Grigar,* 66 S.W.3d 545, 554 (Tex.App.—Houston [14th Dist.] 2002, no pet.). "Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public." *Id.* "There are two types of dedications, express and implied." *Stein,* 53 S.W.3d at 42. There are four elements to establish dedication, whether express or implied: (1) the person making the dedication must have the ability to do so—he must have fee simple title before he can dedicate his property; (2) there must be a public purpose served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of that offer. *Id.* at 42 n. 2; *Lindner v. Hill,* 673 S.W.2d

611, 616 (Tex.App.—San Antonio 1984), *aff'd,* 691 S.W.2d 590 (Tex.1985). Generally, an express dedication is accomplished by deed or other written document. *Stein,* 53 S.W.3d at 42; *Broussard v. Jablecki,* 792 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1990, no writ).

## 2. The Kalbow Parties' evidence

 Here, the Kalbow Parties argued that they were entitled to traditional summary judgment in their favor as a matter of law based on the express dedication of Big Bird Lane to Washington County. The Kalbow Parties presented a 1928 recorded warranty deed conveying the land specifically described therein from George Green to Sam D.W. Low, County Judge of Washington County, and his successors in said office forever—which they argued was effective to expressly dedicate Big Bird Lane to Washington County. The 1928 deed contained a sketch of the L-shaped plat, shown to intersect "Highway No. 90." The 1928 deed was filed and recorded, with Washington County as the grantee.

The Kalbow Parties also presented an affidavit from land surveyor Donald Lampe, who stated:

On August 8, 2013 and revised September 27, 2013,1 did an on-the-ground survey of Big Bird Lane. A plat showing the results of that survey is appended. [ ] This survey plat accurately shows the perimeter boundaries of Big Bird Lane as conveyed to Washington County in 1928 in relation to adjoining properties. It is a .200 acre parcel. A neighboring landowner to the northeast, [the Sheltons], ha[ve] erected certain fences within the deeded boundaries of Big Bird Lane. I have shown these fence line encroachments in yellow on the appended Plat. [ ] These fences and gates are so constructed to effectively block use by the public of Big Bird Lane from its

northwesterly terminus at State Highway 105 to its southeasterly terminus next abutting the Freddie Wellman Property.... Without the removal of these encroachments, the Plaintiff and public cannot effectively use Big Bird Lane for its intended purpose.

The Kalbow Parties submitted an additional March 7, 2014 revision to the plat to the trial court. They presented an affidavit from David Wellmann, who stated that Big Bird Lane provides access from State Highway 105 to all of the Kalbow Parties' properties and that the Sheltons have erected barriers obstructing the Kalbow Parties' use of Big Bird Lane. The Kalbow Parties further presented an affidavit from abstractor Kay Larson, who explored the chain of title to Big Bird Lane prior to its 1928 conveyance from George Green to Washington County. Larson based her findings on her review of real property and other records in Washington County. She stated that the .2–acre tract came out of a 32–acre tract deeded to George Green in 1922 by Jas. and Alice Ferguson, and Larson provided the title history of this 32–acre tract.[9] Lampe also stated that the .2–acre tract came out of such 32–acre tract.

**3. No fact issue raised by the Sheltons**

Because the Kalbow Parties presented evidence establishing their right to a traditional summary judgment in their favor as a matter of law as to the express dedication of the .2–acre Big Bird Lane tract to Washington County, the burden shifted, and we now consider whether the Sheltons presented sufficient evidence to raise a material fact issue. *See Walker,* 924

9. We refer to this as the 1922 deed.

10. Lampe's survey plat indicates that Big Bird Lane extends beyond the western deed line of the Sheltons' property; this was not controverted. In addition, Big Bird Lane

S.W.2d at 377; *Wilkinson,* 2014 WL 3002400, at \*4, 8.

The Sheltons seek to raise a fact issue because Big Bird Lane "dead ends and leads to nowhere but into SHELTONS' own land, not to any property owned by" the Kalbow Parties. Even considering the Sheltons' evidence in the most favorable light, the portion of Big Bird Lane at issue does not lie entirely upon their land.[10] Moreover, the public nature of a road does not depend on facts such as where the road leads and whether the road is in an isolated area, not heavily travelled, or short in length. *E.g., Bush v. Fayette Cty.,* No. 03–05–00274–CV, 2006 WL 952413, at \*4 (Tex.App.—Austin Apr. 13, 2006, no pet.) (mem.op.); *Baker v. Peace,* 172 S.W.3d 82, 90 (Tex.App.—El Paso 2005, pet. denied); *Hatton,* 66 S.W.3d at 556; *Gutierrez v. Cty. of Zapata,* 951 S.W.2d 831, 841 (Tex.App.—San Antonio 1997, no writ); *Dowlen v. Klapper,* 381 S.W.2d 123, 124 (Tex.Civ.App.—Amarillo 1964, no writ); *City of Houston v. Hughes,* 284 S.W.2d 249, 252 (Tex.Civ.App.—Austin 1955, writ ref'd n.r.e.). Nor does the fact that a road ultimately "dead ends" at private property preclude summary judgment. *See Bush,* 2006 WL 952413, at \*1, 6 (affirming summary judgment declaration that .6–mile portion of road beginning at intersection with another road and ending at cattle guard was public).

The Sheltons also attack the Kalbow Parties' proof of express dedication because the "cow path" easement that the Kalbow Parties purportedly used to access Big Bird Lane was never conveyed to any of them but instead is "legally titled in the

curves around to the southeast, and both Nathaniel Shelton and Bryant in their affidavits acknowledged that it adjoins and crosses at least a 10-feet-wide strip of land or easement not conveyed to the Sheltons.

name of Edmund Grant as noted in the Murski deed to the Wellmanns."[11] The Sheltons also contend that they used this easement. However, the Sheltons provide no authority explaining how such facts regarding the easement adjoining Big Bird Lane would raise a fact issue that Big Bird Lane was not a public road by express dedication.

The Sheltons contend that Big Bird Lane as declared in the final judgment is in a different location, shape, or pathway than the road as dedicated in the 1928 deed. However, the Kalbow Parties' evidence established that the L-shaped description (and sketched plat) in the 1928 deed is identical to Lampe's revised survey plat as appended to the final judgment. The Sheltons did not cite, and we have not located, any evidence raising a fact issue that Lampe's plat conflicts with the metes and bounds as described in the 1928 deed.

 The Sheltons take issue with the fact that the 1928 deed did not state the tract was to be used for a county road. The 1928 deed substantively tracked the statutory form to convey a fee simple estate in real property. *See* Tex. Prop. Code Ann. § 5.022(a) (West 2014). The Sheltons did not provide, and we have not located, any authority requiring that a

public dedication particularly describe or otherwise limit the public use. Indeed, where property is so generally dedicated, "the public has a free hand in applying the property to such uses as it may desire," such as a roadway. *City of Fort Worth v. Burnett*, 131 Tex. 190, 114 S.W.2d 220, 223 (1938); *compare Sorsby v. State*, 624 S.W.2d 227, 234 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) (language in deed at issue conveyed fee simple title without any condition that land be particularly used for agricultural and mechanical college), *with Houston Lighting & Power Co. v. State*, 925 S.W.2d 312, 314 (Tex.App.—Houston [14th Dist.] 1996, writ denied) ("Where a dedication is made for a defined purpose, neither the legislature, municipality, its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether the use be public or private, or whether the dedication is a common-law or statutory dedication, notwithstanding that the changed use may be advantageous to the public.") (citing *Burnett*, 114 S.W.2d at 223).

The Sheltons contend that there is no proof that Washington County ever furnished the consideration of "20 fence posts

---

11. Exhibit "A" of the 2001 deed from Jo Ann Murski and Wayne Hajovsky to Freddie and Linda Wellmann described tract 2 of the property and stated that such 23.149–acre tract as deeded in 1962 from Eddie Grant to Bernard J. Murski:

includes a 10 ft. wide road easement not originally included in the description of the called 53.823 acre tract from Eddie Grant et al to Bernard J. Murski dated May 15, 1962 and recorded in Volume 240, Page 613 of the Washington County Deed Records. However, it was a portion of the original Grant tract called 22.75 acres which was conveyed from Leon H. Thiel to Ed Grant in a deed dated January 14, 1911 and recorded in Volume 63, Page 138 of the Washington County Deed Records.

This type of roadway easement is an easement appurtenant that "automatically" follows the dominant estate, regardless of whether it is referenced in a particular intervening deed. *See McDaniel v. Calvert*, 875 S.W.2d 482, 484 (Tex.App.—Fort Worth 1994, no writ) (expressly rejecting argument that plaintiff grantee had no interest in roadway easement because deed and prior deed in chain of title did not contain legal description of easement); *see also Shipp v. Stoker*, 923 S.W.2d 100, 103 (Tex.App.—Texarkana 1996, writ denied) ("An easement is never presumed to be in gross when it can be fairly construed to be appurtenant.").

and 800 feet of wire" stated in the 1928 deed.[12] This does not raise a fact issue. It is the pleader who bears the burden of controverting consideration because the recital of consideration in an instrument of conveyance is prima facie evidence of its amount and payment thereof. *Buccaneer's Cove, Inc. v. Mainland Bank*, 831 S.W.2d 582, 584 (Tex.App.—Corpus Christi 1992, no writ); *see Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (plaintiff is not required to present evidence that agreement supported by consideration). The Sheltons did not plead lack of consideration as an affirmative defense, much less present any evidence to overcome such presumption here.

The Sheltons next argue that there is a material fact issue regarding George Green's ownership of the .2–acre tract conveyed by the 1928 deed due to "obvious gaps" in the chain of title. It is possible that gaps in the chain of title could raise a fact issue regarding whether there was title superior to or a defect in the 1928 deed. *Cf. Harrell*, 379 S.W.3d at 351. However, the Sheltons fail to explain these "obvious gaps." Their own 2001 deed contained the following exception from conveyance and warranty—"[a]ny portion of the property herein described, if any, which falls within the boundaries of any road or roadway." Another exception from conveyance and warranty in the Sheltons' 2001 deed was that "0.1 acres of subject property lies within Big Bird Lane." Abstractor Ronald Bryant did not address, much less controvert, the chain of

title for the 32–acre tract conveyed to George Green from Jas. and Alice Ferguson in the 1922 deed, which Larson and Lampe testified was the source of the .2–acre tract in the 1928 deed. The Sheltons also assert that a fact issue exists as to whether the entire interest in the .2–acre tract was dedicated because Green's wife was not a grantor of the 1928 deed. We disagree. The 32–acre tract described in the 1922 deed was conveyed solely to George Green.[13]

 The Sheltons argue that there is a material fact issue regarding George Green's intent to dedicate and Washington County's acceptance of any dedication. The 1928 deed itself provides direct evidence of Green's intent. Moreover, that a deed was filed and recorded is prima facie evidence of delivery by the grantor and acceptance by the grantee. *McAnally v. Tex. Co.*, 124 Tex. 196, 76 S.W.2d 997, 1000 (1934); *Raymond v. Aquarius Condo. Owners Ass'n, Inc.*, 662 S.W.2d 82, 91 (Tex.App.—Corpus Christi 1983, no writ) (citing *McAnally*, 76 S.W.2d at 1000); *Sorsby*, 624 S.W.2d at 234 (where deed was duly recorded, State accepted subject land as matter of law).

Although Bryant pointed to Big Bird Lane's designation in Washington County's county road map as a private road, and to a street sign (presumably erected by Washington County) depicting Big Bird Lane as private, such labels do not determine the nature of a road. *See* Tex. Transp. Code Ann. § 258.002(g) (West

12. The 1928 deed also recites that George Green conveyed the tract for and in consideration of the sum of $1.00, of which he acknowledged receipt.

13. The Sheltons' own evidence included a 1951 estate partition deed from George Green, Jr., Fanny Green, Lottie Belle Grant, Annie Lee Newsome, Simpson Newsome,

John A. Ferguson, Tommie Dell Ferguson, and Roy Ferguson to Ce Ella Green, George Green's widow, which particularly described the tract as that contained in the recorded 1922 deed. This 1951 deed supports a determination that the 32–acre tract had not been jointly conveyed to George and Ce Ella Green in 1922.

2013) ("The failure to include on a county road map adopted under this section a road in which the county has previously acquired a public interest by ... dedication ... does not affect the status of the omitted road."); *Hughes*, 284 S.W.2d at 252 (rendering judgment that road was public despite "private street" sign).[14] Nor is a fact issue raised by the Sheltons'—instead of Washington County's—maintenance of Big Bird Lane. *See Kunefke v. Calhoun Cty.*, No. 13-05-006-CV, 2006 WL 1553261, at *4 (Tex.App.—Corpus Christi June 8, 2006, no pet.) (mem. op.) ("We are unpersuaded that simply because the County has not maintained the roads, the County did not accept the dedications."); *Hughes*, 284 S.W.2d at 252-53 ("The laying out or maintenance of a road by public authority is not essential to its being a public road.").

 The Sheltons also raise an "injunction issue." Section 37.011 of the UDJA allows for "[f]urther relief based on a declaratory judgment" upon a showing that the relief is "necessary or proper." Tex. Civ. Prac. & Rem. Code Ann. § 37.011 (West 2013). A permanent injunction may be obtained when the evidence establishes that a defendant will not comply with a declaratory judgment. *See Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433 (Tex.App.—Austin 2004, pet. denied). The trial court may grant injunctive relief when the applicant proves the occurrence of a wrongful act giving rise to imminent and irreparable harm for which there is no adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). We review the trial

court's grant of a permanent injunction for abuse of discretion. *See Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 76 (Tex.App.—Houston [14th Dist.] 2014, pet. denied).

The Sheltons simply state that "[t]here is no evidence justifying a permanent injunction" against them. Here, the Kalbow Parties pleaded and submitted supporting evidence that the Sheltons had erected fences and a gate across the public roadway Big Bird Lane—blocking access to their properties and causing them continuing and irreparable harm for which they have no remedy at law. In conjunction with declaring the public nature of Big Bird Lane—the .2 acres described in the 1928 deed—the trial court enjoined the Sheltons from maintaining these or other obstructions within the confines of Big Bird Lane and from interfering with, preventing, or inhibiting the use of Big Bird Lane. The permanent injunction here is sufficiently tailored to the scope of the Kalbow Parties' pleading and proof, and we cannot conclude that the trial court abused its discretion. *See Hatton v. Grigar*, No. 14-09-00630-CV, 2011 WL 175501, at *2 (Tex.App.—Houston [14th Dist] Jan. 20, 2011, no pet.) (mem.op.) (no abuse of discretion in granting section 37.011 order enjoining interference with easement).

**4. The Kalbow Parties' no-evidence motion**

The Kalbow Parties' first amended motion for summary judgment was a hybrid traditional and no-evidence motion. The Sheltons argue that the Kalbow Parties' motion was improper because a party cannot file for no-evidence summary judgment on a claim for which it had the burden of

---

14. The Sheltons rely on *County of Real v. Sutton*, 6 S.W.3d 11 (Tex.App.—San Antonio 1999, pet. denied). However, *Sutton* is distinguishable because at issue was an implied dedication, not an express dedication within a deed. *Id.* at 14, 16-17 (discussing evidence and inferences specifically "in the absence of an express dedication").

proof—specifically, "that 'Big Bird Lane' is a public roadway." There is no dispute that the Kalbow Parties bore the burden of proof on the public nature of Big Bird Lane for their declaratory judgment claims. In their motion, the Kalbow Parties stated: "Washington County is the owner of Big Bird Lane as a matter of law." However, they also stated: "There is no evidence that Washington County is not the owner of Big Bird Lane." If the Kalbow Parties had filed only a no-evidence motion as to the status of Big Bird Lane, they could not prevail. *See Nowak v. DAS Inv. Corp.,* 110 S.W.3d 677, 680 (Tex.App.—Houston [14th Dist.] 2003, no pet.). However, as we already have determined, the traditional ground advanced and supported by the Kalbow Parties— "Washington County is the owner of Big Bird Lane as a matter of law"—is meritorious. And the trial court granted their motion without specifying the grounds. Therefore, even assuming the Kalbow Parties advanced the public nature of Big Bird Lane as a "hybrid" ground, we must affirm based on the traditional ground here. *See Sanchez v. Deutsche Bank Nat'l Trust Co.,* No. 14–13–00272–CV, 2015 WL 3609100, at *2 (Tex.App.—Houston [14th Dist.] June 9, 2015, no pet.) (mem. op. on reh'g) (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.

1989)); *Wilkinson,* 2014 WL 3002400, at *5 (citing *Carr* and *Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 127 (Tex. App.—Houston [14th Dist.] 1994, no writ)).

▮ The Sheltons contend that to the extent the trial court granted a no-evidence summary judgment in favor of the Kalbow Parties, the court erred because the Kalbow Parties' motion "did not identify an element of SHELTON's affirmative defenses [that] has no support in the evidence" and instead "merely alleged there is no evidence to support SHELTONS' entire claim/counterclaim/affirmative defense." Having reviewed the Kalbow Parties' motion, we cannot conclude that they failed to identify which specific elements of the affirmative defense of abandonment they were challenging based on no evidence.[15]

▮ Again, we already have determined that the trial court properly could grant summary judgment in favor of the Kalbow Parties based on the express dedication of Big Bird Lane. The Sheltons failed to plead statutory or common-law abandonment. "The failure to plead abandonment, an affirmative defense, results in its waiver." *Fazzino v. Guido,* 836 S.W.2d 271, 274–75 (Tex.App.—Houston [1st Dist.]

---

15. There are two types of abandonment: common law and statutory under chapter 251 of the Transportation Code. *See Braun,* 2010 WL 2513428, at *7. In their motion, the Kalbow Parties stated there was no evidence that Big Bird Lane had been abandoned by statute: (1) by unanimous vote of the Washington County Commissioners' Court under section 251.002(b) of the Transportation Code; (2) after a replacement road has been designated by the Commissioners' Court and the replacement road was ready to replace it under section 251.051(c); (3) by written order of the Commissioners' Court duly filed and including requisite statutory information found at section 251.058(b); (4) by entry of written order to that effect by the Commissioners' Court under section 251.058; (5) after petition to the Commissioners' Court by eight property owners in the Commissioners' Precinct where the road is located under section 251.052(a); (6) after notice of intent to abandon was posted at the courthouse door of Washington County and two other places in the vicinity of the affected route 20 days before the application for abandonment was made under section 251.052(c); (7) after infrequent use such that Big Bird Lane was enclosed with a fence for 20 years under section 251.057(a); (8) because it is not reasonably necessary to reach adjoining property under section 251.052(b)(2); and (9) because Big Bird Lane is not included in the official county road map adopted by the Commissioners' Court of Washington County in 2008 under section 258.002(g).

1992, writ denied) (citing *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 344 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.)); *see* Tex.R. Civ. P. 94. The trial court did not err in granting summary judgment in favor of the Kalbow Parties.[16]

We overrule the Sheltons' first issue.

### C. Motion to strike and "special exceptions and objections" to the Kalbow Parties' summary judgment

In their third issue, the Sheltons contend that the trial court erred in denying their motion to strike and their "special exceptions and objections" to the Kalbow Parties' summary judgment as contained in the Sheltons' summary judgment response. We review a trial court's decision to admit summary judgment proof for an abuse of discretion. *O'Kane v. Coleman*, No. 14–06–00657–CV, 2008 WL 2579832, at *7 (Tex.App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.).

#### 1. Supplemental affidavits by Larson and Lampe

First, the Sheltons argue that the trial court erred in considering the last alleged "supplemental" affidavits by Larson and Lampe.[17] The trial court's amended summary judgment order and final judgment expressly state that, when the court granted the Kalbow Parties' first amended traditional and no-evidence summary judgment motion, it considered the "papers on file." *See Murphy v. McDermott Inc.*, 807 S.W.2d 606, 611 (Tex.App.—Houston [14th Dist.] 1991, writ denied). There is no dispute that the supplemental affidavits were "on file" with the trial court more than 21 days prior to the summary judgment hearing. *See* Tex. R. Civ. P. 166a(c); *see also Richards v. Allen*, 402 S.W.2d 158, 161 (Tex.1966) (summary judgment proof must "be on file, either independently or as part of the motion for summary judgment, the reply thereto, or some other properly filed instrument").

The Sheltons contend that the affidavits were inadmissible because they lacked exhibit numbers. The Sheltons do not provide, and we have not located, any authority holding that lack of exhibit numbers or captions on purported summary judgment evidence results in reversible error. Nor do the Sheltons argue that the lack of exhibit numbers prevented them from responding—indeed, after the Kalbow Parties filed the two supplemental affidavits, the Sheltons filed their second supplemental response, including the second supplement to Bryant's affidavit.

The Sheltons further assert that the supplemental Larson and Lampe affidavits were not incorporated by reference in or

---

16. The Sheltons also argue that the Kalbow Parties' petition, which incorrectly identified the tract at issue in the 1928 deed as being .2 acre instead of 2.00 acres, somehow defeats summary judgment. The record does not disclose that the Sheltons specially excepted to this defect. *See Porta–Kamp Mfg. Co., Inc. v. Atlanta Mar. Corp.*, 753 S.W.2d 699, 701 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Even if such argument were preserved, it undisputed that the 1928 deed described the property conveyed as "1/5 of an acre of land." Moreover, nowhere in the summary judgment proceedings did the Kalbow Parties seek to have the trial court de-

clare anything but the .2 acre-tract conveyed in the 1928 deed as a public road, which is what the court decreed in its final judgment. We overrule the Sheltons' argument.

17. In both Larson's and Lampe's affidavits, they stated that, based on Lampe's survey work, the .2–acre tract conveyed in the 1928 deed came out of a 32–acre tract conveyed in the 1922 deed from Jas. and Alice Ferguson to George Green, not out of the 37.77–acre tract provided in the general description of the 1928 deed.

filed with the summary judgment motion or supplements. Here, there is no dispute that the Kalbow Parties included the original Lampe and Larson affidavits as exhibits to their first amended motion and to their second supplement to their amended motion, respectively, and they submitted the additional affidavits as supplemental affidavits. Under our precedent, the trial court's consideration of summary judgment evidence attached to previous motions but not incorporated by reference in or attached to a later-filed motion is not reversible error. *Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 248 (Tex.App.—Houston [14th Dist.] 1986, no writ); *see Evans v. First Nat'l Bank of Bellville*, 946 S.W.2d 367, 376 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *see also Oncor Elec. Delivery Co. LLC v. City of Richardson*, No. 05-14-00843-CV, 2015 WL 4736827, at *6 n. 5 (Tex.App.—Dallas Aug. 11, 2015, no pet. h.) (mem.op.) (citing *Vaughn* in rejecting argument that affidavit was not properly before trial court because movant failed to attach it or incorporate it by reference in its amended summary judgment motion). Moreover, trial courts have discretion to permit affidavits to be supplemented or opposed by depositions or by further affidavits. *See* Tex.R. Civ. P. 166a(f). Under these circumstances, where the Kalbow Parties filed for traditional summary judgment, the Sheltons responded, and both sides traded supplemental pleadings and evidence back and forth, we conclude that the trial court did not abuse its discretion by permitting the supplemental Larson and Lampe affidavits.[18]

We next consider the Sheltons' specific objections to the Kalbow Parties' affidavits.

### 2. Wellmann

■■■ With regard to Wellmann's affidavit, the Sheltons argue that it demonstrates a lack of personal knowledge and contains conclusory statements, hearsay, contradictions, and inconsistencies. The Sheltons did not object to a lack of personal knowledge by Wellmann in the trial court and have waived this objection. *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc). In any event, plaintiff Wellmann averred in his affidavit that he had first-hand knowledge of the facts provided.

Even if conclusory, Wellmann's statement regarding Washington County's ownership of Big Bird Lane was supported by facts relating to the 1928 deed and its recording and, in any event, other statements in his affidavit and other summary judgment evidence were sufficient to sustain the Kalbow Parties' burden of proof. *See Gen. Prods. Co. v. Black Coral Invs.*, 715 S.W.2d 121, 123 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Wellmann's affidavit did not construe the 1928 deed, a legal question reserved for the court. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991). Nor do we find Wellmann's statement that the Sheltons' property "is located next adjacent to Big Bird Lane" contained an impermissible conclu-

---

18. The Sheltons' cited cases do not persuade us otherwise. At issue in *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex.App.—San Antonio 2005, no pet.), was the conclusory nature of an affidavit attached to a no-evidence response. *Speck v. First Evangelical Lutheran Church of Houston*, 235 S.W.3d 811, 816 (Tex.App.—Houston [1st Dist.] 2007, no pet.), and *Sugarland Business Center, Ltd. v. Norman*, 624 S.W.2d 639, 642 (Tex.App.—Houston [14th Dist.] 1981, no writ), involved sworn-account affidavits that were attached only to the plaintiff's petition and never included as part of a summary judgment filing.

sion, but instead one factually supported by Lampe's survey and the Sheltons' deed.

As for hearsay, Wellmann's statements regarding the conveyance of Big Bird Lane to Washington County appear to fall within rule 803(20),[19] and the 1928 deed and the deed index appear to fall within rules 803(8) [20] and (14).[21]

Finally, as for contradictions and inconsistencies, we find nothing within Wellmann's affidavit "stating equivocating positions which do not serve to clarify the pertinent issues in the case for which the affidavit is being offered." *See Vela v. Vela*, No. 14–12–00822–CV, 2013 WL 6700270, at *3 (Tex.App.—Houston [14th Dist.] Sept. 24, 2013, no pet.) (subs. mem. op.) (quoting *Hernandez v. Lukefahr*, 879 S.W.2d 137, 143 (Tex.App.—Houston [14th Dist.] 1994, no writ)).

### 3. Lampe

The Sheltons similarly challenge Lampe's affidavit. Lampe, a registered professional land surveyor who performed and prepared a survey in connection with this dispute, averred in his affidavit that he had first-hand knowledge of the facts provided.

■ Lampe supported his statement regarding Washington County's ownership of Big Bird Lane with facts relating to the 1928 deed and its recording. *See Gen. Prods.*, 715 S.W.2d at 123. The Sheltons acknowledge that Lampe is a "measurement specialist." As such, Lampe was able to render facts comparing the general and specific property descriptions contained in the 1928 deed and relating to the location of the obstructions on Big Bird

Lane. We cannot conclude that Lampe's statements that the general description in the 1928 deed was repugnant to its specific description and that the .2–acre tract instead came out of a different 32–acre tract are conclusory because he provided underlying facts in support. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex.App.—Houston [14th Dist.] 2000, pet. denied).

As an expert, Lampe could base his opinion on hearsay, *see* Tex. R. Evid. 703, although we already have indicated that the 1928 deed and index fell within available exceptions.

As for contradictions and inconsistencies, the record contains a signed and certified version of Lampe's revised survey plat. Lampe's reference in his supplemental affidavit to his earlier September 27, 2013 revised survey instead of his most recent March 7, 2014 revised survey did not cause confusion,[22] and the Sheltons could have controverted Lampe's testimony regarding the 32–acre source tract. *See Vela*, 2013 WL 6700270, at *3. Nor do the note regarding how the description of the Sheltons' property includes much of Big Bird Lane and the disclaimer relating to the lack of corner markers on the survey plat render Lampe's affidavit or survey impermissibly contradictory and inconsistent.

### 4. Larson

■ The Sheltons challenge Larson's affidavit based on lack of personal knowledge; they also contend that it contains conclusory statements, contradictions, and

---

19. *See* Tex. R. Evid. 803(20) (Reputation Concerning Boundaries or General History).

20. *See* Tex. R. Evid. 803(8) (Public Records).

21. *See* Tex. R. Evid. 803(14) (Records of Documents That Affect an Interest in Property).

22. The exhibit attached to the trial court's final judgment came from Lampe's March 2014 revised survey.

inconsistencies.[23] Larson, an abstractor with extensive experience running real property searches in Washington County who explored the chain of title for Big Bird Lane, averred in her affidavit that she had first-hand knowledge of the facts provided.[24] Nor does Larson's affidavit contain qualifying language stating that she was rendering subjective "estimates," "beliefs," or "understanding" insufficient to support personal knowledge. *Cf. Kerlin v. Arias,* 274 S.W.3d 666, 668 (Tex.2008) (per curiam); *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996) (per curiam); *San Sebastian Realty Co., Inc. v. Huerta,* No. 14–14–00819–WCV, 2015 WL 9311805, at *8 (Tex.App.—Houston [14th Dist.] Dec. 22, 2015, no. pet. h.) (mem.op.).

The Sheltons likewise argue that Larson's use of the phrase "it appears" renders her affidavit speculative and conclusory on its face. However, the pertinent meaning of "appears" is "becomes evident or manifest"—evident or manifest facts are not speculative. *See* Merriam Webster's Collegiate Dictionary 60 (11th ed.2003). Nor are such statements conclusory where Larson provided the underlying facts in support, namely, the 1922 and 1928 deeds and Lampe's survey. The Sheltons assert that Larson's "switching" her chain-of-title analysis from the 37.77–acre tract[25] to the 32–acre tract conveyed to George Green in the 1922 deed renders her affidavit conclusory and contradictory. However, Larson's supplemental affidavit served to clarify the conflicting general

and specific descriptions in the 1928 deed and the proper chain of title to Big Bird Lane. *See Vela,* 2013 WL 6700270, at *3. Moreover, Larson provided the underlying facts for this "switch" and for her resultant conclusions based on her review of Washington County real property and probate records. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital,* 192 S.W.3d 20, 27 (Tex.App.—Houston [14th Dist.] 2005, pet. denied) (affidavit is not conclusory where "it contains logical conclusions based on underlying facts"). Nor does the "switch" render her affidavit impermissibly contradictory and inconsistent, as the Sheltons remained free to controvert Larson's chain of title on the 32–acre tract.

■ Finally, the Sheltons argue that Larson's affidavit is contradictory and inconsistent with regard to the alleged contents of the Washington County Commissioners' Court's minutes close in time to the 1928 deed or the title history for the 37.77–acre tract provided in the general description of the 1928 deed. However, none of these alleged facts ultimately affects the outcome of the Kalbow Parties' summary judgment. Again, the 1928 deed's recording constituted conclusive evidence of Washington County's acceptance. And with regard to the discrepancy between the general and specific descriptions within the 1928 deed, the Texas Supreme Court recently reaffirmed the rule of construction that an unambiguous metes and

23. Although they raised hearsay as an additional objection below, the Sheltons do not argue hearsay with regard to Larson's affidavit in their brief. In any event, Larson could base her opinion on hearsay, *see* Tex. R. Evid. 703, and we have already indicated that the 1928 deed and deed index fell within available exceptions.

24. The trial court refused to permit the Sheltons to challenge expert testimony contained

in Larson's and Hurta's affidavits based on a lack of state certification because the Sheltons failed to file a *Robinson* motion. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 557 (Tex.1995).

25. The 37.77–acre tract was conveyed by Sam Thornhill to Bone Ferguson, J.M. Ferguson, and Elias Ferguson in 1872.

bounds description within a deed controls over a general description because it provides "better evidence of intent." *See Stribling v. Millican DPC Partners, LP,* 458 S.W.3d 17, 20–23 (Tex.2015) (per curiam). Nothing within the 1928 deed convinces us otherwise here. *See id.* at 21–22 ("[W]e have never held that there was a clear intent for the general description to control when directly contrary metes and bounds clearly defined an area owned by the grantor.").[26]

### 5. "Special exceptions and objections"

■ We likewise review a trial court's denial of special exceptions for an abuse of discretion. *See Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex.2007) (per curiam); *Frankoff v. Norman,* 448 S.W.3d 75, 79 (Tex.App.—Houston [14th Dist.] 2014, no pet.). However, the Sheltons did not present any valid special exceptions to the Kalbow Parties' summary judgment motion within their summary judgment response. Instead, they objected to and requested that the trial court strike the Kal-

bow Parties' summary judgment proof. We already have addressed the Sheltons' evidentiary contentions.

■ On appeal, the Sheltons also insist that the trial court erred in denying their "special exceptions and objections" because the trial court was "confused" regarding the Kalbow Parties' access easement claims on summary judgment. The Sheltons, however, failed to seek any clarifications of unclear or ambiguous summary judgment grounds in the trial court and therefore waived any objection.[27] *See Gammill v. Fettner,* 297 S.W.3d 792, 801 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (argument that summary judgment motion was unclear and ambiguous waived); *see also Sonnichsen,* 221 S.W.3d at 635 ("The purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action.").

■ We conclude that the trial court did not abuse its discretion in its evidentiary rulings.[28] We therefore overrule the Sheltons' third issue.

---

26. We do not address the Sheltons' specific objections to the affidavits of Willy Dilworth and Mary Kay Hurta. Even assuming the trial court should have stricken these affidavits, the Sheltons have not shown that any error probably caused the rendition of an improper judgment that would necessitate reversal. *See* Tex. R. App. P. 44.1(a)(1); *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 230 (Tex.1990) ("When erroneously admitted evidence is merely cumulative or does not concern a material issue dispositive of the case, the error is harmless"). Because the Kalbow Parties established their entitlement to traditional summary judgment based on other evidence, consideration of these affidavits was harmless.

27. Moreover, the record does not reflect any confusion. Although in their live petition, the Kalbow Parties sought a declaratory judgment regarding the parties' rights, obligations, and liabilities with respect to Big Bird Lane and with respect to the access

easement adjoining Big Bird Lane, the Kalbow Parties only moved for summary judgment as a matter of law regarding the public nature of Big Bird Lane. As a result, the trial court's final judgment declares Big Bird Lane to be a public road and permanently enjoins the Sheltons from blocking Big Bird Lane.

28. The Sheltons also contend that the trial court erred in denying their special exceptions contained within their amended answer regarding the lack of joinder of certain alleged neighboring property owners as necessary parties pursuant to rule 39. However, the record does not reveal that the Sheltons brought this issue to the trial court at the summary judgment hearing or at the hearing on the special exceptions and objections to the first amended summary judgment. Further, the trial court overruled and denied the special exceptions and objections specifically "as set forth in paragraph 2 on pages 1–12 of" the Sheltons' second supplemental re-

## D. Attorney's fees

In their fourth issue, the Sheltons challenge the trial court's award of attorney's fees to the Kalbow Parties based on the UDJA. According to the Sheltons, this award is erroneous because this case presented only trespass-to-try-title claims for which attorney's fees are unavailable[29]

We review a trial court's award of attorney's fees under the UDJA for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex.2004); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex.App.—Austin 2006, pet. denied). Under the UDJA, a court "may award ... reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2013). However, a party may not recover attorney's fees under the UDJA when the only issues, aside from attorney's fees, concern trespass to try title or clearing of title. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex.2013); *Florey*, 212 S.W.3d at 448. A trespass-to-try-title lawsuit is an action generally used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex.2004). The recovery of attorney's fees for trespass to try title is barred because, with a limited exception for boundary disputes between adjoining properties, *see* Tex. Civ. Prac. & Rem.Code Ann. § 37.004(c) (West 2013),[30] it is not provided for by chapter 22 of the Texas Property Code. *See Martin*, 133 S.W.3d at 264–65; *see also 1–10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 475 (Tex.App.—Houston [14th Dist.] 2012, pet. denied) (UDJA and trespass-to-try-title statutes differ in pleading and proof requirements, and recovery of attorney's fees).

The Sheltons rely heavily on *Coinmach Corp.*, 417 S.W.3d at 926, in contending that no attorney's fees are available to the Kalbow Parties. We conclude that this reliance is misplaced because *Coinmach* does not require reversal of the attorney's-fee award here.

In *Coinmach*, the Texas Supreme Court reaffirmed its prior holding in *Martin*, that "when 'the trespass-to-try-title statute governs the parties' substantive claims ..., [the plaintiff] may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees.'" *Coinmach*, 417 S.W.3d at 926 (quoting *Martin*, 133 S.W.3d at 267). "In so holding, we

sponse, which only challenged the Kalbow Parties' evidence. The Sheltons had the burden to obtain a timely hearing to present any other special exceptions to the trial court and obtain a ruling. They failed to do so. *See* Tex.R. Civ. P. 33.1(a); *McAllister v. Samuels*, 857 S.W.2d 768, 773 (Tex.App.—Houston [14th Dist.] 1993, no writ).

To the extent this nonjoinder argument implicates subject-matter jurisdiction, which cannot be waived, we already have rejected this argument in connection with Washington County. The failure to join alleged neighboring property owners here likewise does not defeat jurisdiction. *See Brooks*, 141 S.W.3d at 162–63.

29. The Sheltons do not challenge the sufficiency of the evidence supporting the award or the reasonableness or necessity of the award.

30. In 2007, the Legislature added subsection (c) to section 37.004 of the UDJA, which authorizes a party to seek a determination on the construction or validity of "a statute, municipal ordinance, contract, or franchise," notwithstanding section 22.001 of the Property Code, when the only determination concerning title to real property involves the "proper boundary line between adjoining properties." Tex. Civ. Prac. & Rem. Code § 37.004(a), (c); *see* Act of May 17, 2007, 80th Leg., R.S., ch. 305, § 1, 2007 Tex. Gen. Laws 581, 581.

noted that the Legislature has provided the trespass-to-try-title statute as 'the method of determining title to ... real property,' and the Legislature did not provide for attorney's fees in such actions." *Id.* (quoting *Martin,* 133 S.W.3d at 267). *Coinmach,* however, refused to approve or disapprove cases where courts of appeals since *Martin* "have held that the UDJA remains an appropriate alternative avenue to determine property interests, at least when the dispute involves construction of a written agreement." *Coinmach,* 417 S.W.3d at 926. *Coinmach* specifically noted that such cases "distinguish themselves from cases that involve determinations of possessory interests in property." *Id.* (citing *Florey,* 212 S.W.3d at 449,[31] and *Roberson v. City of Austin,* 157 S.W.3d 130, 136 (Tex.App.—Austin 2005, no pet.)[32]). In *Coinmach,* it was "undisputed that the present case requires determination of the parties' possessory rights to the property"; the Court concluded that *Martin* con-

trolled and the apartment property owner could not recover against the tenant in sufferance under the UDJA. *Id.*

Unlike *Coinmach,* the Kalbow Parties were not seeking through their UDJA action to clear any problem with their chains of title, recover possession, or divest fee ownership of Big Bird Lane. Rather, their claims required them to show the elements of express dedication, which involved the construction of the 1928 deed wherein George Green conveyed the .2–acre tract containing Big Bird Lane to Washington County. In essence, the parties' dispute concerned whether the Kalbow Parties, as members of the public of Washington County, have a nonpossessory right or easement to freely use Big Bird Lane. *See Hatton v. Grigar,* No. 01–09–00588–CV, 2011 WL 649685, at *3 (Tex.App.—Houston [1st Dist.] Feb. 17, 2011, pet. denied) (mem.op.) (dedication of public road is not

**31.** The court in *Florey* considered whether *Martin* applied to bar UDJA attorney's fees in a suit seeking adjudication of the validity of a deed of trust on real property. 212 S.W.3d at 449. The *Florey* court concluded that it did not. While the *Florey* court recognized that a declaration regarding the validity of the deed of trust "could ultimately have impacted title and possessory rights to the property," it expressed "doubt" that the legislature intended for the trespass-to-try-title statute to displace or subsume such claims. *Id.* Finally, the *Florey* court noted that the suit had a "more indirect impact on title and possession to real property." *Id.*

**32.** In *Roberson,* a property owner sought a declaration that a sewer easement was invalid and the city sought a counter-declaration that the city owned the easement based on express or implied dedication. 157 S.W.3d at 134. The trial court denied attorney's fees to the prevailing property owner on the basis that the UDJA was not an appropriate vehicle for determining the validity of an easement. *Id.* The question at issue in *Roberson* was whether, under *Martin,* easement claims would be considered "title" claims only. *Id.* at 136.

The *Roberson* court first noted that *Martin's* reasoning was confined to possessory interests in property, such as where the trespass-to-try-title statute is used to clear problems in chains of title or recover possession of land unlawfully withheld. *Roberson,* 157 S.W.3d at 136 (citing *Martin,* 133 S.W.3d at 262, 265). "In contrast, an easement is a nonpossessory property interest" that does not divest fee ownership of the property. *Id.* (citing *Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002)). Second, the *Roberson* court explained that courts generally have not applied the remedy of trespass to try title to nonpossessory property interests such as easements. *Id.* Finally, the *Roberson* court noted the large number of easement cases that have been decided under the UDJA, which is to be liberally construed and states that it applies to determine the validity of deeds. *Id.* at 136–37 (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(b), 37.004). The *Roberson* court held that the property owner could properly bring his claims regarding the easement under the UDJA. *Id.* at 137.

trespass-to-try-title question—it grants an easement and does not divest title); *see also Roberson,* 157 S.W.3d at 136 (easement is nonpossessory property interest). This court expressly has rejected the argument that an action seeking a declaration that a disputed roadway had been impliedly dedicated to the public involved "classic trespass to try title material" and was not appropriate under the UDJA. *Supak v. Zboril,* 56 S.W.3d 785, 792 (Tex.App.—Houston [14th Dist.] 2001, no pet.) (no error in awarding attorney's fees under UDJA).

Moreover, just because this dedication case implicated title to Big Bird Lane, it is not automatically deemed a trespass-to-try-title suit. The trial court's judgment here did not declare title, but rather construed the 1928 deed and declared that Big Bird Lane is a public road. *See Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C.,* No. 14–08–00352–CV, 2009 WL 1795037, at \*6 (Tex.App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem.op.) (attorney's fees recoverable under UDJA where trial court's judgment did not de-

clare title, but rather construed terms of condominium declaration and deed of trust and determined validity and superiority of two lienholders); *cf. I–10 Colony,* 393 S.W.3d at 477 (attorney's fees properly awarded under the UDJA for 2002 declaration regarding equal dignity of liens on property; however, fees could not be properly awarded for 2008 determination of ownership).

Finally, as discussed above, *see* n.7, a large number of dedication cases involving the public status of a road have been decided under the UDJA. Many of these cases determined issues regarding attorney's fees.[33] We conclude that the trial court did not abuse its discretion in awarding attorney's fees under the UDJA to the Kalbow Parties.

We overrule the Sheltons' fourth issue.

### III. CONCLUSION

Having overruled all the Sheltons' issues, we affirm the trial court's judgment.

### Appendix A

---

33. *See, e.g., Chaney,* 2013 WL 6533123, at \*7; *Mitchell,* 420 S.W.3d at 133–34; *Callaghan Ranch,* 2012 WL 394594, at \*9; *Walker,* 2007

WL 2276195, at \*7–8. Although these cases all postdated *Martin,* none of them cited to or analyzed it.